**UNITED STATES ex rel. BROKER v. BAIRD.**

Misc. No. 543.

District Court, E. D. New York.

June 30, 1941.

Milton H. Frankfurt, of New York City, for petitioner.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Frank J. Parker, of Brooklyn, N. Y., Asst. U. S. Atty., of counsel), for respondents.

ABRUZZO, District Judge.

The writ of habeas corpus in this proceeding was obtained on behalf of Edward John Broker, by his wife, Antoinette Broker, for the purpose of inquiring into the propriety of the induction into the Army of the United States of her husband.

The selectee was inducted into the service on June 4, 1941, under the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq. This petition was filed on June 7, 1941. Pursuant to this writ, the selectee was produced in court on June 13, 1941. On this date, the return of Colonel Baird was filed which stated that the selectee, Edward John Broker, was lawfully selected for service as a soldier in the Army of the United States by the authority of the United States under the provisions of the Selective Training and Service Act of 1940.

The petitioner, Antoinette Broker, filed a traverse to the return on June 13, 1941 in which she denied that the selectee was lawfully selected for service and that he had been duly and regularly inducted therein. No new pertinent matter was set forth in the traverse which necessitates basing this decision on the Case Record.

The Case Record before the Local Board indicates that Broker, the selectee, returned his questionnaire on February 24, 1941, in which he made no claim of any dependency or of his intention to be married.

On April 10, 1941, he appeared for a physical examination and on the same day was classified in Class 1-A.

On April 14, 1941, he filed a request for a reconsideration of his case because he planned to be married on June 1, 1941. He claimed to have purchased furniture on January 6, 1940. On April 21, 1941, pursuant to a notice, he was questioned before the Local Board as to his intention to be married. When asked concerning the furniture bill he presented, it was stated:

"Q. Who is Theresa Mirro? A. She is my mother-in-law.

"Q. This shows that the first payment was made by her? A. My mother-in-law put the down payment on it. At that time, I wasn't sure of my job. Then, the Union came in."

The selectee also produced a Finlay-Strauss account book showing the purchase of a ring on May 20, 1939 on which the last payment was made in 1940. The following colloquy ensued:

"Q. It doesn't say that it was an engagement ring? I don't think you have much of a claim here. A. My sister and I live alone. She couldn't live alone in the apartment. She couldn't keep it up."

On April 22, 1941, the Local Board mailed the selectee a notice of his continuance in Class 1-A and on April 26, 1941, he was sent a notice of selection and ordered to report for induction on May 7, 1941.

On May 5, 1941, he appeared before the Local Board with his fiancee and was informed that his time to appeal had expired, but he was granted a stay of his induction and his time to appeal was extended. On May 7, 1941, he signed a notice of appeal on the back of his questionnaire and the complete file was sent to the Appeal Board.

The Appeal Board affirmed the Local Board's determination by a vote of four to nothing.

On May 21, 1941, the selectee appeared at the Local Board and requested a sixty-day deferment, but on May 23, 1941, he was ordered to report for induction on June 4, 1941.

On June 2, 1941, the selectee's then fiancee (now his wife) exhibited a marriage license to the Local Board at which time she stated they intended to be married on June 3, 1941. The day of his induction, the selectee appeared at the Local Board at 6 A. M. and stated that he had been married the day before; later he was inducted and took the oath of enlistment.

The selectee is twenty-three years of age. The claim is made by him that his wife is totally dependent upon him for support and that the record indicates he proved to the Local Board that his marriage was contemplated and entered into after careful consideration and long planning and not for evasion.

In support of the draftee's contention many sections of the Selective Training and Service Act of 1940 are referred to.

This contention is opposed and it is urged that the Local Board acted properly in refusing to reclassify the selectee and that the action of the Board is conclusive upon the Courts.

■ Selective Service Boards are Administrative Bodies created by the Selective Training and Service Act of 1940, with powers, duties and procedures conferred by the law and the regulations not inconsistent with the law as prescribed by the President.

The Selective Training and Service Act of 1940, Section 10 (a), Subsection (2), 50 U.S.C.A. Appendix, § 310(a) (2), states: " * * * Such local boards, under rules and regulations prescribed by the President, shall have power within their respective jurisdictions to hear and determine, subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this Act of all individuals within the jurisdiction of such local boards. The decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe. * * *"

■ In 1917, under a similar section, several cases arose, which have been reviewed recently in United States ex rel. Filomio v. Powell et al., D.C., 38 F.Supp. 183. This case is authority for the holding that the act provides the decisions of the Local Boards are final on questions of fact which arise in administering their duties and the courts may not disturb such decisions unless it appears that the parties involved have not been afforded a full and fair hearing, or that the executive officers have acted contrary to law or have manifestly abused their discretion committed to them by the statute. See also Ex Parte Platt, D.C., 253 F. 413.

In Arbitman v. Woodside, 4 Cir., 258 F. 441, 442, the court made the following comment: "The rule is established that the action of such executive boards within the scope of their authority is final, and not subject to judicial review, when the investigation has been fair and the finding supported by substantial evidence * * *."

This selectee received notice of his classification in Class 1-A on April 10, 1941. He filed a request for reclassification on April 14, 1941 because he planned to be married on June 3, 1941.

This was the first notice that the Local Board received as to his intention or desire to be married.

The statements and information given by the selectee in reference to the furniture bill and account book for the ring were doubted by the Local Board.

The selectee was ordered to report for induction on May 7, 1941, and on May 5, 1941, he appeared before the Board and was informed that his time to appeal had expired. He was granted a stay of his induction and his time to appeal was extended. He later asked for a sixty-day deferment but it was not granted.

■ On June 3, 1941, the selectee was married and claims that he was entitled to a reclassification as he had a wife who was a dependent.

Under the meaning of the law, the decisions clearly show that the selectee's wife is not a dependent. The word "dependent" has been defined by Congress in 50 U.S.C.A. Appendix, § 315(c), Section 15 (c), as follows: "The term 'dependent' when used with respect to a person registered under the provisions of this Act includes only an individual (1) who is dependent *in fact* on such person for support in a reasonable manner, and (2) whose support in such a manner depends on income earned by such person in a business, occupation, or employment." (Italics the Court's.)

Congress never intended in framing the Selective Training and Service Act to afford deferment to any registrant who voluntarily married the day before his induction. In Ex Parte Tinkoff, D.C., 254 F. 222, 224, it was said: "Of course, such voluntary subsequent action on his part cannot operate to defeat the government's right to his services, and it is perfectly clear that the board's action was not arbitrary."

The action of the selectee herein indicates that he would go to any end to avoid military service. He was ordered to report for induction on May 7, 1941. If his time had not been extended, he would have been in the Army on that date. Later, he received another notice of induction and on the eve of that date he married.

After his marriage, no information was furnished the Local Board as to whether or not the selectee's wife was ever employed before or by what means she existed prior to this ceremony.

■ The action of the Local Board in its investigation of this selectee's case was more than fair. Every opportunity was afforded him to present any information before the Board. His case was investigated and determined fairly and impartially. Its decision was supported by substantial evidence in the Case Record. This marriage was entered into voluntarily and solely for the purpose of evading military service. The Local Board was justified in refusing to reclassify the selectee.

Under these circumstances, the writ of habeas corpus is discharged.