## Ex parte KELLEY.

### Civ. No. 1652.

District Court, D. Oregon.

Jan. 7, 1943.

---

Carl D. Etling and Harlow C. Barber, both of Portland, Or., for petitioner Kelley.

James H. Hazlett, Asst. U. S. Atty., of Portland, Or., for the United States.

McCOLLOCH, District Judge. ,

Petitioner, married, was given deferred classification "by reason of dependency"; having requested the "Special Form for Conscientious Objectors", he claimed exemption from all service under military authority. With his questionnaire and the conscientious objector form petitioner filed a detailed statement of his beliefs, together with some literature, including a tract entitled "Neutrality", published by Watchtower Bible & Tract Society, Inc. Petitioner attached to his questionnaire a printed card signed by J. C. Rutherford, President of the Society, certifying that petitioner was an ordained minister. He filed with the Board at a later date a printed letter dated August 15, 1941, signed by the Watchtower Bible & Tract Society, Inc., entitled "Pioneer Appointment".

The local board rejected petitioner's claim for exemption from all military service ,as a conscientious objector and classified him I–A–O, noncombatant general military service. The appeal board affirmed, and on August 15, 1942, the local board ordered petitioner to report for induction into the army. Petitioner declined to obey the order and his indictment followed. Before arraignment he filed this petition for Habeas Corpus on the ground that he had been denied due process, mainly in this—that the classification given him was arbitrary and capricious, not based on substantial evidence, that he was entitled to be represented by counsel before the boards and the opportunity to confront and cross-examine witnesses against him.

Before both boards, in writing and orally, petitioner asserted that he was an ordained minister and was entitled to classification as such, IV–D. He furnished the printed card at the outset, as stated above, and the printed letter at a later date. Petitioner's name was never, so far as shown by the file, on the list of Pioneers certified by the National Selective Service Headquarters to the Oregon State Headquarters. He did file a certificate bearing date July 16, 1942, and signed by T. J. Sullivan, Superintendent of Evangelists for the Society, certifying (after certain recitals) that petitioner "is therefore declared by this Society a duly ordained minister of the Gospel".

I will briefly discuss the points urged for the issuance of the writ in the order of presentation at the argument.

Point 1. That the local board mistakenly thought it could not give petitioner ministerial classification unless his name appeared on the list of "Pioneers" certified by the National Headquarters. Petitioner contends that the local board held this opinion, but the file and the affidavits do not bear out the contention. On the contrary, it is shown that the Board considered petitioner's age (twenty at the time he registered), his limited schooling (seventh grade), as well as pertinent matters about his life.

■ Point 2. That a registrant has the constitutional right "to face his accusers and to be represented by counsel" before the boards. Answer—Registrants are not under accusation. Their status is being determined. When requested, they are in all cases, as was done here, granted a hearing, and the Government appeal agent (in this case a lawyer of excellent standing in the community) is specially charged by the regulations (Regulation 603.71) with protecting the interests of registrants. I understood counsel to say that the Regulations prohibited appearance by other counsel, but I have found no such regulation.

■ Point 3. Counsel for petitioner asks that subpoenas issue for the attendance of the members of the local board "to cross-examine them" about their statements in their affidavits, which have been filed in opposition to the petition herein. He desires further, he says, to examine them on the witness stand as to whether the board in fact made certain determinations, as shown by the file, and at the times stated in the file, particularly whether the board did, as stated in the file, classify registrant on June 3, 1942, in Class III–A.

Answer—The official record of the board's proceedings cannot be impeached in this manner. Further, I do not feel that board members appointed after such careful selection from civilian walks of life, serving gratis, should be harassed by fishing expeditions intended to show the falsity of the official file. The board members and their paid clerks who have appeared before me in this and another jurisdiction represent a high type of citizenship, and they are entitled to the same immunity from inquiry into their motives and mental processes as are granted to other fact-finding agencies, and to the same presumptions of verity of their records that are granted to other official records.

■ Another question remains to be decided. Petitioner claimed exemption on account of conscientious objection to all military service, noncombatant as well as combatant, and made written as well as oral statements explaining his views, and filed literature which he declared he approved. The local board, upheld by the appeal board, classified petitioner in I–A–O, which calls for noncombatant military service. Could the boards on this record give the petitioner less than he asked, which was the full exemption from all military service allowed to certain conscientious objectors? I believe they could. Obscure statements requiring interpretation are present in petitioner's catalog of his beliefs, and the boards must be left as the appointed fact-finders to reconcile, if possible, and to interpret, these statements of belief against the background of petitioner's life and conduct as disclosed to the boards. There is nothing in judicial training or experience which would qualify one to pass better judgment in the field of religious interpretation than the boards, carefully selected under the Act and constituting a cross-section of the mature minds of the various communities.

■ The Government contends that this petition for Habeas Corpus should not be entertained, because an indictment having been returned, defendant may only be tried on the indictment. He may not have a preliminary trial by Habeas Corpus. This contention overlooks that I intend in this case to follow, as I have in other cases, the rule declared in United States v. Grieme, 3 Cir., 128 F.2d 811, and other recent decisions, that the classification of a registrant cannot be inquired into on trial of an indictment for declining to obey board orders.

■ The Government contends further that a registrant may only invoke Habeas Corpus after first submitting to the board's authority and being inducted, citing Drumheller v. Berks County Local Board No. 1 et al., 3 Cir., 130 F.2d 610, 612. But see Ex parte Stewart, D.C., September 30, 1942, 47 F.Supp. 410, 416, opinion by Judge Yankwich.

Still further the Government contends that petitioner having furnished bail and thereafter surrendered to the Marshal, could not under the settled rule of certain jurisdictions maintain Habeas Corpus. 29 C.J. 23.

Without intending to bind myself or the Court in future cases by what I have here done, I have not yielded to these contentions but have given the petitioner a chance in this proceeding to establish, as claimed by him, that the action of the boards in denying him classification as a minister, was arbitrary and capricious and not based on substantial evidence. He has not discharged this burden, nor has he raised a material issue of fact which would entitle him under Walker v. Johnston, Warden, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830, and Waley v. Johnston, Warden, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302, to the issuance of the writ.

An appropriate order with findings of fact will be entered.*

---

* The practice as approved in Walker v. Johnston, Warden, supra, and the Saboteur cases (Ex parte Quirin), 63 S.Ct. 2, 87 L.Ed. —, has been followed in this case. Upon the filing of the petition an order to show cause was issued and the Government filed a return supported by affidavits. To the return petitioner replied with affidavits, including petitioner's own affidavit, and the board's file was made part of the record by stipulation. My holding is that it does not appear from the petition and the traverse of the Government's return that a material issue of fact is involved or that as a matter of law cause for granting the writ exists.

The most recent discussion in the Supreme Court dealing with Habeas Corpus is to be found in Adams, Warden v. Gene McCann, December 21, 1942, 63 S.Ct. 236, 87 L.Ed. —, opinion by Justice Frankfurter, and dissenting opinion by Justice Douglas.

The Conference of Senior Circuit Judges at the September Session, 1942, authorized the Chief Justice to appoint a committee "to study the entire subject of procedure on applications for Habeas Corpus in the Federal Courts".

That a veteran adjudged insane by an Arizona State Court and detained in a Veterans Hospital in Oregon may, upon proper showing, invoke the writ of Habeas Corpus out of the United States District Court for Oregon, was recently held by my colleague, Judge James Alger Fee, in an interesting opinion. In the Matter of Carroll H. Ross, December 16, 1942, 48 F.Supp. 815.