## SEELE v. UNITED STATES.
### No. 12476.

Circuit Court of Appeals, Eighth Circuit.

Feb. 23, 1943.

Bryan Purteet, of St. Louis, Mo. (Joseph C. Hopewell, of St. Louis, Mo., on the brief), for appellant.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo. (David M. Robinson, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, RIDDICK, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The appellant, Eugene William Seele, Jr., appeals from a judgment of conviction after trial before a jury in the District Court of the United States for the Eastern District of Missouri. The indictment, returned at the March Term, 1942, of said court, in one count charged appellant, a person liable for military training and service in the Land and Naval Forces of the United States, and a registrant with Local Board No. 5, University City, St. Louis County, Missouri, with a violation of the provisions of Section 311 of Title 50 U.S.-C.A.Appendix, in that he failed and refused to report for inductment into the Military Service of the United States when ordered so to do in accordance with the provisions of the Selective Training and Service Act of 1940, and the amendments thereto, 50 U.S.C.A.Appendix, § 301 et seq.

Upon registering with Local Board No. 5 of said St. Louis County, appellant filed his Selective Service Questionnaire June 23, 1941. In this questionnaire he made the following general statements:

He said he was clearing-house clerk in a large bank, to-wit, The Mississippi Valley Trust Company of St. Louis, Missouri. In this position he operated adding and proof machines and sorted checks to bank requirements; that he had worked three and one-half years in that job, and expected to continue indefinitely in it; that his salary was seventy-five dollars per month; and that the other business, or work in which he was then engaged, was photography, which he preferred. He listed himself, by reason of religious training and belief, as conscientiously opposed to participation in war in any form, and therefore claimed

exemption from combatant training and service; he said he was a minister of religion and customarily served as such. That he had been a minister of Jehovah's Witnesses for two years, but had not been formally ordained, and was not a student preparing for the ministry in a theological or divinity school. He injured his neck in a polo game about two years before that and thought a resulting "subluxated vertebrae might have some effect on my classification".

There are in his questionnaire various statements as the bases for his religious attitude, among them, that "I want no part in war· in any form", and "I believe in the use of force only in defense of myself, my family, and my personal property if endangered and threatened".

His physical examination, July 16, 1941, reported no injury to his back to which he referred. September 8, 1941, the Local Board placed him in Class 1–A–0, by a vote of 3 to 0. September 26, 1941, he signed and filed a written appeal to the Board of Appeal. The record minute of action by the Board of Appeal shows that that Board classified the registrant in class 1, Subdivision A, by a vote of Yes 5, No 0, dated February 19, 1942. October 30, 1941, the following entry by the Local Board appears in the record: "This Board is not in favor of changing classification due to being a C. O. Please note his name does not appear in the list of members of Jehovah's Witnesses. We feel he is using his C. O. as a subterfuge and think his induction will materially change his views about fighting to protect his country".

As shown above, the Board of Appeal reviewed the file before the Local Board and determined that the registrant should not be classified in Class 4.

Mr. Frank A. Thompson, a lawyer of St. Louis County, Missouri, was a Special Assistant Attorney General of the United States with the title of "Hearing Officer". To him was referred the claim of appellant as a conscientious objector. The hearing was held December 10, 1941. Seele appeared and stated that he did not wish to press his claim as a conscientious objector, but did want to stand on his claim as a Minister of Jehovah's Witnesses. Thereafter appellant executed the following instrument of withdrawal:

"To Whom It May Concern:

"The undersigned states with reference to his classification under the Selective Service Law that he does not claim exemption as a Conscientious Objector, and wishes to withdraw his claim for such exemption.

"(Signed)   Eugene Seele, Jr.,

"January 19, 1942".

The Attorney General's office, therefore, on or about February 7, 1942, returned the case to the Board of Appeal "without recommendation of the Department of Justice".

During the pending of his matter he submitted various letters and documents to both Local and Appeal Boards, which, as appears from the record, were duly received and considered by those Boards. They appear in the record before us as Exhibits A, B, C, D, E, F, H, and I. Exhibit "A" is a document   "To Whom it May Concern", issued June 16, 1941, by Watch Tower Bible and Tract Society, Incorporated, for charitable, religious and scientific purposes, under the hand of "Emerson L. Knost, Company Servant". This document proclaims that appellant then was "an ordained minister of the Gospel sent forth in conjunction with the above named organization to preach the gospel as 'commanded by the Lord Jesus at Mathew 24, 14, * * * by calling upon the people at their homes".

Exhibit "B", dated September 20, 1941, addressed to Local Board No. 5, announced that he did not accept his classification in 1–A–0; that he could not obtain the proper forms to make his appeal, and this letter was to serve as his appeal. He announces that he "will never waver from my consecration to Jehovah".

Exhibit "C" is his letter to the Board of Appeal, received December 27, 1941, in which he says it may help the Board, in considering his reclassification from 1–A–0 to 4–D, to be advised that "I have been a full time witness for Jehovah since the 14th of this month, December, 1941. I then gave up my secular work to become a minister to preach the gospel of God's Kingdom".

In Exhibit "D", received by the Local Board February 5, 1942, he states that he had theretofore notified the Board that he had discontinued secular work and was "putting in full time preaching the Gospel of God's Kingdom"; that his ministry papers were in process of being filed, and asked that his case be reopened for the purpose of reconsidering his classification at the time when his name should be added to the list of ordained ministers.

Exhibit "E" is defendant's letter of March 10, 1942, enclosing to Local Board No. 5, Exhibit "F" which is the formal certificate of ordination issued March 7, 1942, by the Watch Tower Bible & Tract Society, Inc., through its "Superintendent of Evangelists". The letter also states that Seele has submitted affidavits to be accompanied by an application of the Society to have his name added to the list of pioneers, certified to state head-quarters.

Exhibit "H" is a letter from the Selective Service State Director to Local Board No. 5, dated June 30, 1941, stating for the information of the Board that there was a small group of Jehovah's Witnesses, known as "pioneers" who occupied a position similar to an ordained minister. Their names should be found upon the list at state head-quarters. The letter also states that "the question of whether or not they stand in the same relationship as regular or duly ordained ministers in other religions, must be determined by the Local Board, in each individual case".

Exhibit "I" is a letter from the Deputy Director of National Headquarters of the Selective Service System, dated June 12, 1941. After stating that it is impossible to make a general determination, this letter advises, in an effort to assist the Local Boards, that whether or not Jehovah's Witnesses "stand in the same relationship as regular or ordained ministers in other religions must be determined in each individual case by the Local Board, * * * whether or not (among other things) they perform functions which are normally performed by regular or duly ordained ministers of other religions".

These Exhibits were offered in evidence by appellant; the government objected to their admission as constituting no legal defense; the objections were sustained, and exceptions preserved. The case was submitted to the jury. A verdict of guilty was returned, and judgment followed.

In this appeal the following points are relied upon by appellant in brief and argument:

"1. The indictment is defective because it does not negative the exceptions and exemptions contained in the Selective Service Act.

"2. Section 11 (U.S.C.A. 50 appendix 311) is unconstitutional and void because it delegates authority to individuals and boards to make any kind of an order or direction and undertakes to punish persons who violate any order or direction given by such individuals and boards, without regard to the reasonableness of such order or direction and without regard to whether such order or direction has any basis in law.

"3. The government's evidence was insufficient and the court should have sustained appellant's demurrer to the evidence.

"4. The court erred in refusing to permit defendant to prove that Local Board No. 5, University City, Missouri, the Appeal Board and Draft Officials acted arbitrarily and capriciously without foundation of law and refused to give defendant a hearing in arriving at his classification, so-called.

"5. The court's charge to the jury was erroneous.

"6. The judgment and sentence of the court is void."

■■■ 1. It is now the settled rule, as declared by the Supreme Court of the United States, "that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it." McKelvey et al. v. United States, 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301. See, also Nicoli v. Briggs, 10 Cir., 83 F.2d 375, 379, and Rase v. United States, 6 Cir., 129 F.2d 204, 207.

This point is, therefore ruled against appellant.

■ 2. Substantially this same charge of unconstitutionality was leveled against the Selective Draft Law of 1917, 50 U.S. C.A. § 226 note. In the Selective Draft Law Cases (Arver v. United States), 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A. 1918C, 361, Ann.Cas.1918B, 856, the constitutionality of that Act was sweepingly upheld. There, as here, the main contention was that the Act vests both legislative and judicial power in administrative officers, without reserving to the courts unlimited power to review such administrative decisions by according to the accused person the right of trial by jury.

"The statutes and regulations under which the change in a citizen's status from

civil to military takes place must be interpreted with a full and fair regard for the rights of the individual, but they will not be given an overtechnical construction which is not necessary for such protection and which merely results in hampering the government". United States ex rel. v. Drum, 2 Cir., 107 F.2d 897, 898, 129 A.L.R. 1165, certiorari denied 310 U.S. 648, 60 S.Ct. 1098, 84 L.Ed. 1414. See, also, United States v. Lambert, 3 Cir., 123 F.2d 395 and United States v. Herling, 2 Cir., 120 F.2d 236, and cases cited.

■ 3. Under this heading, and claim that the government's evidence was insufficient, counsel for appellant presents a contention not urged in the trial court, to-wit, that the Local Board did not comply with paragraphs 389, 390, and 391, Section 31, Vol. 3 of Selective Service Regulations, which prescribe formal steps for determining delinquency and reporting the same to the United States Attorney for his action.

In the instant case, however, all the facts essential to confer jurisdiction of this offense are so plain that a more formal recital, and a mere technical observance of procedure was not required. The appellant was duly classified by the Local Board, and that classification was unanimously confirmed on appeal. By order March 21, 1942, he was ordered to report for induction April 1, 1942, at 6:20 A. M. Notice was duly sent to him. March 31, 1942, he addressed to the Local Board a formal response to this order in which he declared himself "strictly neutral in wars of these nations"; that he would not change or alter his decision for the reasons therein stated, and that he would be "unable to report at 6:20 A. M. April 1, 1942". In view of this specific announcement of his defiance of the Board's order, his delinquency was duly reported to the United States Attorney and this prosecution resulted.

4. This specification presents what is regarded by counsel for the government as the only serious question in the case, to-wit, whether the trial court erred in rejecting the testimony offered by appellant in an effort to show (1) that he was an ordained minister, and, therefore, entitled to a deferred classification in Class 4–D, and (2) that the Board acted in an arbitrary and capricious manner in that "the clerk of the Board threatened and intimidated" appellant refusing "to give him advice or to furnish him the blanks and forms

necessary to take the proper action" for appeal from the classification of the Local Board. Seele, in his testimony, was asked this question by his counsel:

"With what gentleman did you usually talk when you went to the Board? A. I believe his name is Mr. Poston.

"Q. Tell the jury the manner in which Mr. Poston received you and treated you?

The government objected that "it constitutes no defense in this case". The objection was sustained, and appellant made the following offer of proof: "I will prove by the witness that this man, Poston, threatened and intimidated this witness when he presented himself to the Board; that he made as if to grab him with his arm; that Poston told him that they didn't have any time for conscientious objectors there at the Board; that Poston refused to give him the advice as to how to proceed before the Board, and told him that he would have to find out for himself".

This was objected to as calling for a conclusion and constituting no defense to this action. Counsel further offered to prove that Seele repeatedly requested permission to go before the Local Board, but that Poston refused to allow him to go before the Board, told him he had no right to do so, and "generally conducted himself in a manner designed to intimidate this defendant."

■ To these offers of proof the district attorney objected "for the reason that the evidence shows the man Poston was merely a clerk of the Board, who had no judgment or discretion—exercised no judgment. Under the laws and regulations they are not entitled to a hearing before the Board as if it were a jury trial, but the Board has to consider all the documents which the registrant files, and we object for the reason that if this registrant has been deprived of his rights, which the government denies, his remedy is other than a defense to this criminal prosecution". This objection was sustained, as were others, upon the ground that "this court has no authority to review the rulings of the Selective Service Board". Testimony theretofore introduced showed that the man Poston, prior to his induction into the army, was a clerk in the service of the Local Board, and was not a member of that Board. The offers of proof fell far short of establishing the charge of threats, intimidation, and physical misconduct on

the part of the clerk,—much less, by imputation, on the part of the Board itself.

██ Furthermore, appellant did take his appeal in due course; and, in addition to the showing made by his questionnaire, the Boards received, and presumably considered, all the letters and other documents embraced in the Exhibits filed by appellant. The contention of appellant is that this showing conclusively established that he is a minister, both regular and ordained, within the purview of the Selective Service Act, and that in reversing this case the judgment of the courts should be substituted for that of the Boards created by that Act as the final fact-finders under its provision. If error be committed by the Local Board the remedy of appeal is provided; and while, in the last analysis, courts can prevent arbitrary action, if it exist, from being finally effective, "a registrant cannot come to a court for such relief until he has exhausted all available and sufficient administrative remedies". Johnson v. United States, 8 Cir., 126 F.2d 242, 247. It is true that appellant has exhausted such administrative remedies, but it is the generally accepted rule that, under the Selective Training and Service Act, no review of findings of Local Draft Boards upon any classification or the denial of an exemption is committed to the courts, and relief may be granted the registrant only when the Local Draft Board has acted arbitrarily and capriciously and without substantial evidence. Johnson v. United States, 8 Cir., 126 F.2d 242; Rase v. United States, 6 Cir., 129 F.2d 204; United States v. Grieme, 3 Cir., 128 F.2d 811, and many others.

This is in accord with the pronouncement of the Supreme Court that where the decision of a Director is final and conclusive on any specific matter under an Act, it is not subject to judicial review, "at least unless the decision be wholly unsupported by evidence, wholly dependent upon a question of law, or clearly arbitrary or capricious". Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256.

The Selective Training and Service Act of September 16, 1940, 50 U.S.C.A. Appendix, § 305(d) provides: "Regular or duly ordained ministers of religion, and students who are preparing for the ministry in theological or divinity schools recognized as such for more than one year prior to the date of enactment of this Act, shall be exempt from training and service (but not from registration) under this Act."

The regulations prescribed by the President define regular and ordained ministers as follows:

"B. A 'regular minister of religion' is a man who customarily preaches and teaches the principles of religion of a recognized church, religious sect, or religious organization of which he is a member, without having been formally ordained as a minister of religion; and who is recognized by such church, sect, or organization as a minister.

"C. A 'duly ordained minister of religion' is a man who has been ordained in accordance with the ceremonial ritual or discipline of a recognized church, religious sect, or religious organization, to teach and preach its doctrines and to administer its rites and ceremonies in public worship; and who customarily performs those duties".

██ In the course of his very excellent opinion for the Court of Appeals for the Sixth Circuit, Rase v. United States, 129 F.2d 204, 209, Circuit Judge Simons says: "The phrase 'minister of religion' as used in the Act is to be interpreted according to the intention of the Congress, and not by the meaning attached to it by the members of any particular group. Congress undoubtedly intended to exempt such persons as stand in the same relationship to the religious organizations of which they are members, as do regularly ordained ministers of older and better known religious denominations. This is borne out by the provision for the exempting of theological or divinity students. If we understand the appellant's argument, every member of his sect is a minister of religion and so entitled to exemption. No differentiation is to be recognized between shepherd and flock or between pastor and congregants. Followed to its logical conclusion, this would mean that all of the members of any religious group which imposes upon its adherents an obligation to teach and preach its beliefs or to make converts, are exempted under the Selective Service Act without regard to whether such activity constitutes their sole or principal vocation. It is inconceivable that it was the intention of the Congress to incorporate in the Act an exemption so broad and all-embracing".

The obligation of a Local Draft Board to grant a registrant a fair hearing on the matter of classification does not mean a trial by a court, or a trial in any strict or formal sense. Id., 129 F.2d loc. cit. 205. Nor is the Draft Board required to weigh the evidence. Checinski v. United States, 6 Cir., 129 F.2d 461. It should be remembered that immunity from military service arises not as a matter of constitutional grant, but by virtue of Congressional deference to conscientious religious views. Rase v. United States, supra. The burden, therefore, is not upon the government, but upon one claiming exemption to bring himself clearly within the excepted class.

"The object of Congress in the enactment of the statute is not to be thwarted because a religious society chooses to designate its ordinary members as ordained ministers". Buttecali v. United States, 5 Cir., 130 F.2d 172, 174.

In all the Exhibits filed by appellant, containing letters of advice from officers and directors of the Selective Service, it was expressly enjoined that the question of whether or not the claimants stand in the same relationship as regular or ordained ministers in other religions, and whether or not they perform functions which are normally performed by regular or duly ordained ministers of other religions, must be determined in each individual case by the Local Board. There was before the Draft Boards in the instant case abundant evidence from which they could properly conclude that this affiant was not a minister within the intention of Congress and the terms of the Selective Service Act. Such has been the conclusion of courts in other circuits in cases in which members of this same group have appeared as claimants for exemption.

Furthermore, the acts of appellant throughout the proceedings were not such as to inspire confidence in his sincerity, other than his aim to escape military service. He relied at first upon his alleged physical ailment, and his claim as a conscientious objector to military service. In June, 1941 (Exhibit "A"), the Watch Tower Bible & Tract Society, through a person, claiming to be a "Company Servant", certified that he was then an ordained minister—a certificate in conflict with his own questionnaire statement and the later official action of the same Society March 7, 1942 (Exhibit "F").

In his letter of March 10, 1942, enclosing this notarized ordination he advised the Local Board that he had submitted affidavits accompanying an application to have his name added to the list of pioneers certified to state headquarters. No such certification appears in the record. According to his own admissions, February 3, 1942 (Exhibit "D"), he did not discontinue secular work and devote full time to preaching the gospel until in December, 1941. We conclude that the entire record before the Selective Boards discredits his claim that he is a "minister" within the meaning of the Act and the Regulations prescribed.

The charge of the trial court sets forth correctly the grounds upon which the defendant could be found guilty: "The court charges the jury that, if you find and believe from the evidence that the defendant, Eugene William Seele, Jr., on or about the 16th day of October, 1940, was duly registered by the Selective Service Board No. 5 of St. Louis County, Missouri, and that he thereafter duly filed his questionnaire; and that he was thereafter classified in Class 1–A by said Board; and that he was thereafter allowed an appeal to the Board of Appeals; and further find that the Board of Appeals affirmed his classification in Class 1–A; and if you further find that he was then notified of his classification by the Local Board; and that thereafter he was duly notified by said Local Board No. 5 to report for induction into service on or about the first day of April, 1942; and further find that the defendant thereafter knowingly, wilfully, unlawfully and feloniously failed and refused to report for service in obedience to said order of said Local Board, then you are instructed that you must find the defendant guilty of the charge set out in the indictment; and, if you do not so find, then you should acquit the defendant."

Counsel for appellant excepted to the following paragraph of the charge: "The court further charges the jury that you should not take into consideration any reasons offered by the defendant for his failure and refusal to report for induction into military service; that it is the function of the Selective Service Boards, duly appointed and organized according to law, to classify registrants and to fix the time of their induction into service; and that the defendant had no right to determine for himself whether he should, or should not, be given any particular classification".

While this language standing alone is not the most fortunate that could have been selected, it must be considered in connection with the entire charge, and more particularly in view of the single objective aimed at by defendant's counsel, which was to review the finding of the Draft Boards as to the classification made. Another exception preserved was the following: "The court erred in not instructing the jury that ministers are exempt from military service."

Such was the substantial burden of the requests for instructions offered, which invited the jury to substitute its judgment for that of the exclusive fact-finding agencies, established by the Act. They were properly over-ruled. In the face of this record could the jury possibly be confused as to the issue? The trial court made it clear to the jury that it is the exclusive function, of the Selective Service Boards to classify registrants and to fix the time of their induction into the service; and that the defendant had no right to determine for himself whether he should be given any particular classification.

In view of the earnest insistence of this appellant and his counsel, we have perhaps given unnecessary space to this consideration. Our conclusion accords fully with that of other circuits which have had before them similar claims to exemption and deferment by members of this same Corporate Society.

The Constitution gives to Congress the power to declare war and to raise and support armies, and these provisions embrace authority "To make all Laws which shall be necessary and proper for carrying [these powers] into Execution". Constitution, Article 1, § 8. In time of war, concern for the public safety demands promptness and precision in the exercise of these powers. In arriving at our conclusion in this case we have been governed by the clear conviction that the Draft Boards, Local and Appeal, upon whom was conferred final power to classify this registrant, acted with full jurisdiction of the subject matter, and not in an arbitrary and capricious manner, nor without ample evidence to support their conclusions.

Finding no reversible error in the record we conclude that the judgment should be affirmed and it is so ordered.