**GOODWIN v. ROWE, United States Marshal.**

**No. 28.**

District Court, N. D. West Virginia.

March 16, 1943.

Horace S. Meldahl, of Charleston, W. Va., for petitioner.

Joe V. Gibson, U. S. Atty., of Kingwood, W. Va., and Ezra E. Hamstead, Asst. U. S. Atty., of Morgantown, W. Va., for respondent.

HARRY E. WATKINS, District Judge.

The petitioner, Matthew Goodwin, a member of "Jehovah Witnesses", was classified as a conscientious objector by his local draft board and ordered to report for work of national importance. He was arrested and subsequently indicted for failure to so report, and has filed a petition for writ of habeas corpus. Petitioner alleges that he is a minister, and entitled to full exemption under the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix § 301 et seq.; that the local board and the appeal board acted arbitrarily and capriciously in denying him IV-D classification as a minister; that both draft boards were prejudicial and discriminated against him, and denied him a fair hearing. Petitioner offered no evidence to show that the draft boards were prejudiced or discriminated against him, or that he had been denied a fair hearing, but relied chiefly upon his claim that the draft boards arbitrarily and capriciously denied him classification as a minister.

The evidence shows that petitioner was placed in 1-A classification by his local board at Buckhannon, West Virginia, from which classification he appealed. The appeal board referred his case to the Department of Justice pursuant to Section 5(g) of the Act, for a hearing upon his claim as a conscientious objector, and later classified him in IV-E as a conscientious objector. The local board likewise placed him in such classification and ordered him to report for induction into a camp for

704

conscientious objectors under civilian direction, where he would not be required to engage in either combatant or non-combatant military service, but would do work of national importance. He admitted that he did not report for induction into work of national importance because, he says, he was a minister and under no obligation to report.

The Selective Service Act of 1940, in Section 5(d) provides that "Regular or duly ordained ministers of religion, and students who are preparing for the ministry in theological or divinity schools recognized as such for more than one year prior to the date of enactment of this Act [September 16, 1940], shall be exempt from training and service." 50 U.S.C.A. Appendix § 301 et seq. Whether the petitioner is a "regular" or "ordained minister" of religion is the point at issue. Both the local board and the appeal board considered the evidence submitted by him and held that he was not a minister of religion.

The Selective Training and Service Act of 1940, like its predecessor, the conscription Act of 1917, 50 U.S.C.A. Appendix § 201 et seq., sets up a complete administrative system for the registration, classification and induction of male citizens. All questions or claims with reference to exemption are committed to registrant's local board for determination, subject to appeal to the appeal board, and in some cases an appeal to the President of the United States. The Act does not grant jurisdiction upon the courts to review any classification or the denial of any exemption made by the local boards.

■ During the last war, in a case arising in this circuit, Arbitman v. Woodside, 4 Cir., 1919, 258 F. 441, 442, the court said: "The rule is established that the action of such executive boards within the scope of their authority is final, and not subject to judicial review, when the investigation has been fair and the finding supported by substantial evidence; but upon proof that the investigation has not been fair, or that the board has abused its discretion by a finding contrary to all the substantial evidence, relief should be given by the courts under the writ of habeas corpus." Under the 1940 Act the courts have reached a similar conclusion, although the registrant must first exhaust his administrative remedies before asking for such a writ. Rase v. United States, 6 Cir., 129 F.2d 204; Johnson v. United States, 8

Cir., 126 F.2d 242; United States v. Kauten, 2 Cir., 133 F.2d 703; Buttecali v. United States, 5 Cir., 130 F.2d 172; Fletcher v. United States, 5 Cir., 129 F.2d 262; United States v. Grieme, 3 Cir., 128 F.2d 811.

■ The question before me in this case is whether there is substantial evidence to sustain the finding of the boards that this petitioner is not a minister of religion within the meaning of the law and the prescribed regulations which have the authority of law. Petitioner charges violation of Opinion No. 14 of the Director of Selective Service, but such opinions of the director do not have the force of law. Ex parte Stewart, D.C., 47 F.Supp. 415, 418.

In his verified questionnaire dated May 12, 1941, the petitioner wrote under the heading "Occupation or Activity" the following: "I am working at present. The job I am working at now is coal mining. I do the following work in my present job —Loading coal. I have done this kind of work for 7 years". He stated that his average weekly earnings in this job are $25; that he is an employee working for salary, wages, commission, or other compensation; that his employer is Hutchinson Coal Company, whose business is coal mining. To the question "Other business or work in which I am now engaged" he answers "None". To the question "I have also worked at the following occupations other than my present job during the last 5 years", he answers "None". In another part of his questionnaire he states that he is a minister of religion and has been a minister of Jehovah Witnesses since 1934; that he was formally ordained by Jehovah and the Watch Tower Bible & Tract Society. No date is given of his ordination. He states that he in single, age 29, and has completed the seventh grade in school. Petitioner states in his questionnaire that "In view of the facts set forth in this questionnaire, it is my opinion that my classification should be class 4 because I am conscientiously opposed to war by reason of religious training and belief also by having years ago made a consecration of my life to the Lord's service". On the same date he filed a verified form as a conscientious objector in which he is asked to give a list of "all occupations, positions, jobs, or types of work, in which you have at any time been engaged, whether for monetary

compensation or not". He lists under that question three coal mining jobs from 1934 to date. He states that he is a member of Jehovah Witnesses and customarily attends meetings of the sect at Buckhannon, West Virginia, and that C. L. Coup is the pastor or leader of such congregation. On June 22, 1942, when petitioner was given a hearing before a representative of the Department of Justice upon his claim as a conscientious objector he was asked "Do you act as a teacher or preacher" and he replied "I am public servant of the Buckhannon Company of Jehovah's Witnesses, also study director" Again he was asked "What is your business, Mr. Goodwin", and he replied "I am a coal miner". He stated that he put in his spare time in work of Jehovah Witnesses. He admitted that his name was not on the list of ministers furnished by the sect to the Commissioner of Selective Service in the State of West Virginia.

On June 29, 1942, petitioner filed an occupational questionnaire and again gave his present job as loading coal; that the job for which he was best fitted was coal mining; farming next and then trucking and raising stock. Again on October 13, 1942, when he was given a physical examination he gave his occupation as coal mining.

These various questionnaires constitute the means utilized by the Act for bringing all available data bearing upon classification to the attention of the boards. The answers contained in them show that the local board and appeal board had very substantial evidence before them to justify their finding that petitioner was not entitled to exemption as a minister. Their finding was neither arbitrary nor capricious. The boards permitted him to supplement the answers in his questionnaires with any other papers he cared to submit. The men who are members of his local board are his neighbors. Some of them have known him since he was a small child. They were chosen from his neighborhood in order that they might reach a fair classification upon the facts. This they have done. Petitioner complains that the draft board failed to reduce to writing and place in the file facts within the personal knowledge of members of the board. It is not necessary to discuss this point, because there is substantial evidence in the record under petitioner's own signature to sustain the finding of the boards.

Petitioner takes the position that when he became a Jehovah Witness he made a covenant to teach the beliefs of his sect, and was thereby ordained by God. As I understand petitioner, every true Jehovah Witness is a minister of religion and entitled to exemption. He takes the position that each particular religious sect is entitled to determine who are ministers in their sect, and that the draft boards are required to follow such findings. As was said by the court in another Jehovah Witness case, Rase v. United States, 6 Cir., 129 F.2d 204, 209, "No differentiation is to be recognized between shepherd and flock or between pastor and congregants. Followed to its logical conclusion, this would mean that all of the members of any religious group which imposes upon its adherents an obligation to teach and preach its beliefs or to make converts, are exempted under the Selective Service Act without regard to whether such activity constitutes their sole or principal vocation. It is inconceivable that it was the intention of the Congress to incorporate in the Act an exemption so broad and all-embracing. The statutory exemption must be applied in consonance with the clearly apparent purpose of the Congress, and not in response to the interpretation placed upon it by particular religious groups or their adherents." Congress did not delegate to any religious sect the power to interpret the Act. Specific authority is given to the local boards to determine classifications and exemptions. Petitioner's own statements indicate that he is not a minister within the meaning of the Act, regardless of what he may be in the organization to which he belongs. Haberman v. United States, 5 Cir., 131 F.2d 1018.

For the foregoing reasons the writ will be discharged.