### UNITED STATES ex rel. DE GRAW v. TOON, Lieutenant Colonel.

#### Misc. No. 825.

District Court, E. D. New York.
Oct. 22, 1943.

Frederick G. Watson, of New York City, for relator.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y.; (Frank J. Parker, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for respondent.

ABRUZZO, District Judge.

This is a hearing on a return to a writ of habeas corpus.

The relator, under the Selective Service and Training Act, of 1940, 50 U.S.C.A. Appendix, § 301 et seq., was classified in Class 1–A and was ordered to report for induction into the Army on December 15, 1942. He reported for active duty on December 22, 1942.

Prior thereto, the relator's application to be placed in a deferred classification because of the destitution of certain dependents was overruled by the Selective Service Board.

From December 22, 1942, until June 1, 1943, the relator served as a private in the Army of the United States.

As a result of an application for discharge, on June 1, 1943, the relator was honorably discharged from the Army of

the United States pursuant to Section V, AR 615—360.

As a condition precedent to his discharge, the relator was required to furnish assurance from his former employer that he would be re-employed at his former occupation as a coremaker at the foundry of the Wright Aeronautical Corporation at Paterson, New Jersey.

The decision of the Army of the United States in granting the relator his discharge was based upon the destitution of his dependents, viz., his father, James B. De Graw; his mother, Rebecca L. De Graw, and his niece, Shirley M. Helms. The facts relative to dependency were thoroughly investigated by the Army of the United States and the American Red Cross.

On June 2, 1943, this relator reported in person to his Local Selective Service Board, and apprised it of his honorable discharge and the conditions and causes therefor.

On June 3, 1943, the relator returned to his former employment as a coremaker at the Wright Aeronautical Co.

On June 11, 1943, he was notified by his Local Selective Service Board that he was reclassified in Class 1-A. Following this reclassification, he was ordered to be inducted into the Army of the United States on July 19, 1943. After his reclassification and prior to his reinduction into the Army, the relator attempted to find out the basis for his immediate reclassification and reinduction. He was informed that it was the unanimous opinion of the Board that was where he belonged. An appeal by the relator confirmed the decision of the Local Selective Service Board, placing the relator in Class 1-A.

It is difficult for the Court to glean from the record in what manner the Local Selective Service Board arrived at the decision of reclassifying this relator in Class 1-A so soon after his discharge from the Army, since too little time had elapsed for his situation to have changed to vitiate the reasons for his discharge. It is apparent that the Local Selective Service Board reclassified this relator in 1-A, ten days after his release from the Army by reason of the destitution of his dependents, on his record as it existed prior to his first induction into the Army.

Slight reference is made in the record as to a farm owned by the relator's parents from which there might be some income.

However, the record is practically devoid of substantial facts regarding this feature of the case.

The United States Attorney in his brief cites United States ex rel. Broker v. Baird, D. C., 39 F.Supp. 392, and United States ex rel. Erichetti v. Baird, D.C., 39 F.Supp. 388, as authority for the finality of the decision of the Local Selective Service Boards, provided the decision as to classification is not made in a capricious or arbitrary manner.

Classifications may be made solely on the basis of the selective service questionnaire without requiring hearings, although a registrant may be granted a hearing prior to classification. The regulations make full provision for the personal appearance of the registrant for the purpose of a hearing to submit whatever evidence or produce whatever witnesses he may desire.

On June 11, 1943, when the local selective service board reclassified the relator in Class 1–A, ten days after his discharge from the Army, they were fully aware of the reasons for his discharge and the members of the board knew that he had been granted an honorable discharge from the Army of the United States on the basis of the destitution of his father, mother and niece, after an investigation of the circumstances by the Army and the American Red Cross.

The United States Attorney and the representative of the Army now state that there is no manner in which the Army can review its decision granting an honorable discharge to the relator even though it might be erroneous.

In view of the circumstances involved in this matter, it would seem that the Local Selective Service Board before reclassifying this relator with such rapidity should have granted him a hearing at which he could have submitted such evidence as he thought necessary to substantiate his claim. Whereupon, the Board could have more properly determined the reclassification of the relator.

The Court is of this opinion despite the contention that the relator did not request a personal hearing. Surely, he was entitled to feel justified in taking the position that his 1–A classification was erroneous in view of the Army's decision granting him an honorable discharge for the reason of dependency. He had a right to expect that his classification in 1–A by the Local Selec-

172

tive Service Board would not be done without at least a hearing before that Board so that the proper evidence could be submitted to it. There seems to be a clash of authority between the Army of the United States and the Local Selective Service Board. Therefore, a decision should be made by the Board, based upon all the facts which might be elicited from the relator.

In the face of this situation, the Court has no alternative but to grant the writ of habeas corpus and to refer the case back to the Local Selective Service Board so that they may reconsider the matter upon the entire facts involved and redetermine the reclassification of the relator's status after a full hearing.

The Court is aware of the fact that Selective Service regulations pertaining to dependency have been changed since April, 1943, which might have some bearing on the board's decision. It might also be that a redetermination of this matter might still indicate that the relator belongs in Class 1–A. The income from the farm and the family allowance by the Government might well take this relator out of a dependency classification. These are matters which only the Board can pass upon. After a reconsideration of this case in accordance with this decision, it is entirely the province of the Selective Service Board to make its decision as to the reclassification of this relator.