## BRONEMANN v. UNITED STATES
### (three cases).
### Nos. 12502–12504.

Circuit Court of Appeals, Eighth Circuit.

Oct. 28, 1943.

Henry C. Mundt, of Sioux Falls, S. D., for appellants.

George Philip, U. S. Atty., of Sioux Falls, S. D. (John T. Heffron, Asst. U. S. Atty., of Deadwood, S. D., and Leo P. Flynn, Asst. U. S. Atty., of Sioux Falls, S. D., on the brief), for appellee.

Before WOODROUGH, THOMAS, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellants are able-bodied men, capable of bearing arms in defense of the country and subject to the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix § 301 et seq. They duly registered under the terms of the Act but claimed to be entitled to classification in Class IV–D on the ground that they were ordained ministers of religion in that they were "ordained ministers of Jehovah's Witnesses." Their claims to Class IV–D classification were denied by the draft board and they took appeals, as provided in the Act. The proceedings resulted in their being classified in Class IV–E as conscientious objectors instead of in the requested IV–D classification. Having been duly ordered to report for work of national importance under civilian direction, they wilfully refused to obey the orders and were indicted under 50 U.S.C.A. Appendix § 311, for failing to perform a duty required of them under the Act and regulations. They pleaded not guilty and after trial were convicted and sentenced to imprisonment.

On the trials they admitted their wilful refusal to obey the orders but sought to defend on the ground that they were in fact exempt from conscription under the Act as "ordained ministers of religion", 50 U.S.C.A.Appendix § 305, and that the orders directed to them were void because the Local and Appeal Boards had acted arbitrarily, capriciously and unfairly in classifying them in Class IV–E and in refusing to classify them in Class IV–D.

The court tried the cases without jury (jury having been waived) and upon consideration refused to receive in evidence the records of the proceedings had before the local draft board or on the appeals to the Board of Appeals which were offered as tending to sustain the defense of appellants that the Boards had acted arbitrarily, capriciously or unfairly in classifying the appellants in Class IV–E and in refusing to classify them as "ordained ministers of religion" in Class IV–D. It found the defendants guilty as charged and the sentences of imprisonment followed.

On exceptions duly preserved to the adverse rulings and judgment of the court, the appellants present for our decision the single question whether evidence, which they claimed tended to show that the Local and Appeal Boards acted arbitrarily, capriciously or unfairly in classifying them in Class IV–E and in refusing to classify them in Class IV–D, was competent to constitute a defense to the charge against them under Section 311. Their position is that the Board's order was void by reason of the alleged arbitrary, capricious and unfair classification and that they had a right to refuse to report as required by it, and that the issue raised by their claim was triable by court and jury under their pleas of not guilty to the indictments.

The question is of far-reaching importance and has received careful consideration by many district courts [1] and by several Courts of Appeals.[2] Appellants also contend that this court has committed itself to their position by its decision in Johnson v. United States, 8 Cir., 126 F.2d 242, but we do not agree. In that case the appellant had submitted to his classification by his Local Draft Board and having taken no appeal therefrom he could not lawfully refuse to obey the induction order directed to him by his Local Board in conformity with his classification. Here the appellants resisted the classifications and duly appealed therefrom so as to exhaust administrative remedies.

[1] Dick v. Tevlin, D.C., 37 F.Supp. 836, 837; United States ex rel. Filomio v. Powell, D.C., 38 F.Supp. 183; United States ex rel. Broker v. Baird, D.C., 39 F. Supp. 392; United States ex rel. Pasciuto v. Baird, D.C., 39 F.Supp. 411; United States v. Newman, D.C., 44 F.Supp. 817; United States v. DiLorenzo, D.C., 45 F. Supp. 590; Ex parte Kelley, D.C., 48 F. Supp. 816; United States v. Goodwin, D.C., 49 F.Supp. 510; Goodwin v. Rowe, D.C., 49 F.Supp. 703; Meredith v. Carter, D.C., 49 F.Supp. 899; Bullard v. Local Board, D.C., 50 F.Supp. 192.

[2] United States v. Grieme, 3 Cir., 128 F. 2d 811; Rase v. United States, 6 Cir., 129 F.2d 204; Fletcher v. United States, 5 Cir., 129 F.2d 262; Checinski v. United States, 6 Cir., 129 F.2d 461; Buttecali v. United States, 5 Cir., 130 F.2d 172; Drumheller v. Berks County Local Board, 3 Cir., 130 F.2d 610; Baxley v. United States, 4 Cir., 134 F.2d 998; United States ex rel. Phillips v. Dawner, 2 Cir., 135 F.2d 521; Goff v. United States, 4 Cir., 135 F.2d 610; United States v. Mroz, 7 Cir., 136 F.2d 221; Seele v. United States, 8 Cir., 133 F.2d 1015.

336

■ The Selective Service Act of 1940 contemplates that, generally speaking, every male person between specified ages, residing in the United States, shall be liable for training and service in the land or naval forces of the United States, and throughout its provisions it puts upon any such man who seeks to be exempted the burden of showing that he comes within the terms of some particular exception specified in the Act. The machinery which the Act sets up for its administration is adapted to perform the task of selecting the proper men needed to defend the country and to eliminate the unfit and specially excepted ones, with due regard for the individual but with promptitude and efficiency commensurate with the exigencies of war. In that situation, in Seele v. United States, 8 Cir., 133 F.2d 1015, this court upheld conviction under Section 311 of the accused registrant claiming to be a minister of religion in the same sect as this appellant, and sustained the trial court's rulings and instructions to the jury which were the same in substance as the rulings and conclusions of law of the trial court in this case which are here assigned as error.

■ Under the Act all necessary powers of inquiry, decision and direction over individuals in the broad class of males of military age are delegated to and vested in designated Boards and officers until the selected individual is inducted into the military services, which then assume control and impose their respective disciplines. The provisions and regulations afford adequate and appropriate means for the hearing and determination of all claims of the individuals upon whom the liability to military service is imposed by reason of their male sex, military age and residence within the United States. No Draft Act could be drawn to operate automatically by designation of the particular individuals required to serve in the armed forces out of the many millions in the class liable to such service. To be effective the selection of the individual must be delegated as it was delegated in the Act.

■ For the whole class of persons the procedure set up by the Act provides to the individual the full protection of due process of law throughout the proceedings by which his general liability to military service becomes a fixed obligation through his selection and induction into such service.

■ Obviously the governmental function of calling and selecting men for armies and navies of defense in war is not a function of judicial character or so regarded by any nation. The state of war is not permanent but its demands are of intransigeant urgency and no provision of the Selective Service Act empowers the judicial branch of the government to perform any part of the function appropriately delegated by Congress. The courts are not vested with any authority to entertain appeals from or to review or supervise the conduct of the draft boards or other draft officers in any of the proceedings carried on by them within the powers conferred upon them by the Act and regulations under the Act.

■ The provisions and plan of the Act clearly manifest the intent of Congress to invoke no judicial aid in the performance of the examination, elimination and selection processes of the draft. Although the function to be performed by the draft authorities leads to the restriction of personal liberty incident to military service, the Act does not confer upon the designated boards and officers charged with its administration any power to seize the person of an individual. His civilian status and personal liberty remain intact throughout the proceedings by which the constituted authorities draft him into the armed services. Such proceedings, though they include attendance before the tribunals, examinations and hearings, do not of themselves deprive the individual of liberty, and therefore they afford no justification for judicial interference at any stage thereof. Ultimately all the delegated powers culminate in the order to the registrant to report for service. Until that order is complied with, the registrant's liberty remains intact.

■ But the plan of the Act does contemplate that when the authority constituted to perform the non judicial function of draft selection has completed the task and has defined the duty of any individual under the Act and has called on him to perform it, his wilful refusal constitutes an offense against the United States under Section 311 cognizable in the courts like other offenses and similarly punishable. Obviously, however, the jurisdiction to try and punish for offenses, conferred on the courts by Section 311, is not intended to contribute in any direct way to the processes

of elimination and selection to augment the armed forces exclusively committed to the draft authorities. It contemplates, on the contrary, that in the course of justice imprisonments will, in the particular cases, prevent military service.

In these cases the record before us shows that the appellants are, and all their adult lives have been, farmers, occupied from day to day through their years in performing the multiplied exacting tasks of farmers on mechanized farms in South Dakota. That they are religious men and conscientiously opposed to war has been fully recognized by the draft authorities in their classification as conscientious objectors. It need not be declared that such farmers may not also be ministers of religion, but it is obvious that, assuming the possibility, decision of the question whether persons so occupied on the farm, day in and day out in the plain view of their community, are ministers of religion in common understanding is a question of fact involving the degrees of their devotion to and occupation in religion and niceties of distinctions in the greatest of all fields of interest—religion. It cannot be said that the courts have established a standard to distinguish farmers in general (who are almost universally religious-minded men in this country), from such farmers who may be ministers of religion with any such finality as to make the question in a particular case a question of law. It remained simply a question of fact, determinable under the Act by the draft authorities. Where, as in these cases, they have made determination, the appellants became bound to obey the order based on the determination. The order constituted the final definition by the duly empowered draft authorities of the duty which the Act imposed on the appellants.

As the Act imposes liability to perform duty on males of military age within the United States and sets up appropriate machinery to define and specify and bring home to each individual the duty due from him, the function relative to the military draft left to the courts under Section 311 is obviously and necessarily a narrow one. The offense made triable in court is the registrant's wilful refusal to perform the duty to which the Act makes him liable and which has been inquired into, defined and brought home to the accused through established procedure by properly constituted authority. Although the jurisdiction to try an accused for such offense necessarily implies a hearing on issues raised by plea of not guilty, it is contrary to the intent of the Act manifested throughout all its provisions that judicial definition of a registrant's duty may directly or indirectly be substituted for that of the constituted authority. The menace of war and the nature of the draft function to meet it exclude any such possibility. War will not wait to afford judicial process to ten million men immediately needed for defense.

When a registrant charged under the Act with refusal to perform a duty found to be required of him, contends that the draft authorities have classified him arbitrarily and unfairly, such a plea must be considered merely an attempt to have the courts exercise indirectly an authority under the Act from which they are plainly excluded by its intendment. The plea necessarily implies an inquiry and classification by the courts contrary to the Act, and evidence to support such a plea should be excluded.

Such conclusion in no wise conflicts with the fundamental power of the courts to protect against deprivation of liberty without due process of law. No legislative enactment may deprive them of that power. Arbitrary, dishonest action by draft authorities is not due process of law. But as we have pointed out, the processes of the draft authorities, whether fair or otherwise, are halted at the threshold of the liberty of individuals. Such authorities are not empowered to seize the person. These appellants do not claim that the draft authorities have encroached upon their liberty. They were at liberty when arrested under court process. If they had obeyed the direction of the Board's order to report and had been then taken in charge, there would be a deprivation of liberty of judicial cognizance under the constitutional writ of habeas corpus which searches through all forms to the sufficiency of the cause of detention.

It is not compatible with the non judicial nature, the necessities and the provisions of the Selective Service Act to receive evidence of wrongful classification on the trial of a registrant under Section 311 for refusal to perform. Such refusal is a crime. A man cannot turn the question of his military duty into a matter of court and jury inquiry by simply staying

away from constituted authority—perhaps until the war is over. Such we understand to be the fair implication of the decision of the Supreme Court in Bowles v. United States, 319 U.S. 33, 63 S.Ct. 912, 87 L.Ed. 1194.

The judgments are affirmed.