### JOHNSON v. UNITED STATES.
### No. 12074.

Circuit Court of Appeals, Eighth Circuit.
March 10, 1942.

Rehearing Denied April 3, 1942.

244

James T. Blair, Jr., of Jefferson City, Mo. (Hayden C. Covington, of Brooklyn, N. Y., on the brief), for appellant.

Richard K. Phelps, Asst. U. S. Atty., of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., on the brief), for appellee.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

STONE, Circuit Judge.

This is an appeal from a conviction for failing to report for induction into service in violation of Section 11 of the Selective Service Act of 1940, 50 U.S.C.A.Appendix. § 311.

After duly registering, appellant filed his questionnaire on the ordinary form' with the Local Board. In this questionnaire, he stated (under "Series VIII—Minister, or Student Preparing for the Ministry")' that "I am not a minister of religion"; and (under "Series X—Conscientious Objection to War") that he was conscientiously opposed both to "combatant" and to "noncombatant" service. Thereupon, the Local Board classified him as "Class 1, Subdivision A," on December 30, 1940. Thereafter, appellant called on the secretary of the Board, Hunziker, protesting his classification in view of his claim of conscientious objections and further asserting that he was a minister. The secretary gave him the special form (Form 47) for conscientious objectors and told him he could write a letter setting out his position as to being a minister. Thereafter, appellant filled out Form 47 and filed it with the Board on January 13, 1941, together with a letter asking to amend his statement under above "Series VIII" of the original questionnaire to show he was a minister and explaining why this had not been done originally in the questionnaire. On January 15, 1941, he was reclassified and placed in 1–A–O, which is the class for conscientious objectors opposed to combat but not opposed to noncombat service. Thereafter (February 21, 1941) he was ordered to report for induction on March 3, 1941. He refused to appear for induction. This indictment resulted.

The lines of defense were (1) that no notice of reclassification into Class 1–A–O had been mailed to or received by appellant, hence he was denied his right to appeal from the reclassification by the Local Board; (2) members of the Board had misled him as to his rights, thus resulting in denial to him of his right to such appeal; (3) that the reclassification was arbitrary, with no supporting evidence, while all of the evidence before the Board (when it made the reclassification) showed he

should have been placed in class 4–D or, at least, in 4–E.[1]

The Court submitted the case on the sole issue of whether or not a written notice of the reclassification had been "mailed" to appellant—the theory of law thus applied being that, if such notice had not been mailed, appellant had been denied his right of appeal from the Local Board to the Board of Appeals; while if it had been mailed and appellant had not availed himself of his right to appeal, he could not be relieved of his failure to report for induction because of any misclassification.

The assigned errors presented here have to do with (1) denial of directed verdict, (2) erroneous admission of evidence, (3) alleged comment by the Court in ruling on evidence, (4) alleged improper argument by counsel for the Government, (5) erroneous charge and denial of requests to charge, and (6) excessive sentence.

### (1) Denial of Directed Verdict.

### (2) Erroneous Admission of Evidence.

These two matters are treated together because it is necessary to resolve the admission of evidence in order to determine the action of the Court in denying a directed verdict. Appellant contends that a verdict should have been directed for two reasons, one of which is that the evidence was insufficient to justify a verdict that notice of the reclassification had been mailed. Properly to determine that contention, it is first necessary to decide the admissibility of the challenged evidence, because such evidence really constituted the vital evidence of such mailing.

The challenged evidence was testimony by Hunziker, the clerk of the Board, that he had mailed notice to appellant of the reclassification on the date of reclassification, January 15, 1941. The objection to this testimony is that it was secondary and an attempt to impeach the Board records which (it is claimed) were the best evidence. The particular record thus intended by appellant is the "Classification Record", being Form 100. This Record is

a two ("right" and "left") page record horizontally and vertically lined. Each horizontal line is devoted to the record of a single registrant who is identified by "order number" and by "name of registrant." The vertical lines divide the pages into 28 numbered columns, each column having a printed heading indicating the information to be placed thereunder as to each registrant. Column 13 is for the "Classification" given each registrant. Column 16 is headed "Date Classification by Local Board Mailed to Registrant." Column 27 is headed "Remarks."

The entries as to appellant appear on pages 5 of this Local Board. Under column 13 appears the classification 1–A–O— the "O" having been added, in accordance with the Regulations (par. 364(b)), as a result of the reclassification. Under column 16, appears "Dec. 30–1941" (should be 1940). Under column 27, appears "Reclassified Jan 15–1941 1 A O."

Appellant's contention is that since no entry of mailing notice of the reclassification appears under column 16, it is a contradiction of this record to produce oral evidence that such notice was mailed; and that such evidence is secondary because the record is the best evidence of what was done.

The challenged evidence was by the secretary of the Board and was, in substance, that he did mail the notice of reclassification on January 15, 1941, and that "there is nothing there [in column 16] that shows about reclassification and that is what happened in this case."

Both "classification" and "reclassification" are covered by the Regulations. The official Forms—of which the Classification Record was Form 100—are expressly made part of the Regulations (par. 163(a)). Nowhere on this Form appears any call for information concerning notice as to a change in classification except, possibly, column 23 "Date Notice of Continuance of Classification Mailed", which refers to action by the Board of Appeals. It may

---

[1] Class 1–A, appellant's original classification, is defined by the Regulations (par. 328) as "Available; fit for general military service." Class 1–A–O is defined (par. 364) as being available for "non-combatant" service but not (because of conscientious objections) for "combat" service. Class IV is defined (par. 327) as "*Deferred* specially by law or because unfit for military service."

Class IV–D is a deferred sub-class (under IV) because "Minister of religion or divinity student"—a class "exempt from training and service (but not from registration)" under § 5(d) of the Act, 50 U.S.C.A.Appendix § 305(d). Class IV–E is a sub-class defined (par. 328) as "Conscientious objector available only for civilian work of national importance."

be that the Regulations intend "Classification" to cover "reclassification." However, it would not be unnatural for a Board official to regard an original classification as different, for record purposes, from a later reclassification and, therefore, to conclude that Form 100 made no call for record thereon of date of mailing notice of such reclassification. Column 16 follows, in natural order, columns calling for information connected only with original classification.

■ The law applicable to the facts above set forth is as follows: *First.* There is nothing in the Act, or in the Regulations, which makes any entry in any records to be kept under it conclusive as to the existence or non-existence of the fact represented by an entry or called for by a form heading. The entry is not the fact, it is merely a record as to something being done or not done. The entry is evidence of the doing or not doing but it is not conclusive. Therefore, other evidence is proper to show that a required action was or was not taken by the Board even though such evidence contradicts the record entry. The length to which a holding that such entries are conclusive would lead is illustrated as to this very registrant where the entry as to date of mailing the notice of the original classification appears as "Dec 30–1941", which is a date later than the submission of this appeal.

■ *Second.* This Form 100 is made part of the Regulations. It contains no call for entry of any record concerning reclassification except column 23 headed "Date Notice of Continuance of Classification Mailed" which, obviously, refers to action by the Board of Appeal (Regulations, par. 377, b, 1). Whether the Regulations require entry of date of mailing notice of reclassification on Form 100 is by no means clear. Hence, failure to make such entry could not be conclusive. Therefore, other evidence as to whether such notice was actually mailed and when is entirely proper. There is no error here in admission of this evidence of the secretary of the Local Board as to mailing of this notice.

■ We turn next to appellant's contention that a verdict of acquittal should have been directed because the evidence was insufficient to justify finding that a notice of reclassification was mailed. For appellant, the evidence is that his Classi-

fication Record (Form 100) contains no entry to that effect; that he received no such notice; that he had continued to live at the address shown in his registration and classification records; and that the secretary of the Board had written the United States Attorney (March 6, 1941), "The registrant [appellant] was notified of this change in classification, orally, by the writer." The evidence for appellee is that the secretary testifies that such notice was mailed by him on the date of reclassification; that he remembered this matter because appellant was one of the first instances of conscientious objection before the Local Board—his number being 125 A; that he always mailed out such notices; that he always "cleared up" his desk each day; that he later gave appellant oral notice; that appellant had consulted with the secretary and with two members of the Board (separately) after the reclassification and none of them had ever heard of any claim concerning this lack of notice until appellant testified in this case, and appellant had never mentioned to any of them anything about an appeal from classification by the Local Board. Obviously, this evidence presents a conflict which would have supported a finding either way by the jury as to mailing of this notice.

The second reason why appellant contends the evidence was insufficient is because (as he claims) "the undisputed evidence showed that appellant is an ordained minister and that the Board acted arbitrarily and capriciously in classifying him in 1 A O, and furthermore because under Selective Training and Service Act of 1940, all that is required of an ordained minister is to register, which the undisputed evidence shows appellant did."

Section 5(d) of the Act, 50 U.S.C.A. Appendix 305(d), provides that: "Regular or duly ordained ministers of religion * * * shall be exempt from training and service (but not from registration) under this Act." There is no dispute as to due registration by appellant.

The general plan of the Act differentiates between registration and service in the forces. Registration covers more men than does service. With the narrow exceptions in section 5(a), all male citizens and all alien residents who have declared citizenship intentions—both classes within prescribed age limits—are required to *register* (section 2, 50 U.S.C.A.Appendix § 302). Various sections of the Act define

exemptions from or deferment of various classes from *service* among those *registered*. Those not required by the Act to register are outside the further provisions of the Act and do not come within the jurisdiction of any agency set up by the Act. All registrants are subject to classifications which protect the exemptions and deferments prescribed by the Act or the Regulations. Such classifications are based on factual situations. The method of determining the fact situations is defined by the Act, sec. 10(a) (2), 50 U.S.C.A.Appendix § 310(a) (2), as a Selective Service System, which "shall provide for the classification of registrants * * *." The machinery to effectuate this method is made up of local boards and appeal boards. The local boards have power "to hear and determine * * * all questions or claims with respect to inclusion for, or *exemption* or deferment *from,* training and service under this Act of all individuals within the jurisdiction of such local boards" (italics added). Appellant's matter here is a claim to "exemption * * from" training and service. Clearly it is a matter submitted by the Act to the jurisdiction of the local board and for its determination. Any such determination of the local board is made subject to an appeal to an appeal board. The President is authorized to create and establish this System; and, broadly, to prescribe the necessary rules and regulations to carry out the provisions of the Act, sec. 10(a) (1). In accordance with these powers, the President has created and established such System and has promulgated such rules and regulations. This System and these rules and regulations provide proper means and procedure for determining fact situations as to claims for exemption, for deferment and for inclusion in particular categories, as to service, prescribed in the Act; and also for a review of such determinations by appeal boards.

From the above outline of the pertinent requirements and provisions of the Act and of the Regulations, the following is clear: Appellant was required to register; his claim for exemption as a minister must be presented to the local board; that board must determine the fact as to appellant being a minister (within the meaning of the Act) and, therefore, entitled to the exemption provided by the Act; such determination of the local board is subject to appeal to the appeal board. The situation is that all of these necessary steps were taken by appellant except an appeal from the unfavorable determination of the local board in reclassifying him in 1–A–O.

Appellant's complaint here, as below, is that the local board acted arbitrarily in not classifying him in IV D. No such board can bind a registrant by an arbitrary classification against all of the substantial information before it as to his proper classification. The Act and the Regulations afford him a proper and a sufficient remedy by giving him a right to an appeal to the appeal board which has power to undo any injustice in or any mistake in classification. The jury found that the Regulations had been complied with in "mailing" appellant notice of reclassification. When a local board has taken the action required as prerequisite to an appeal from it, a registrant must take that appeal as a further step in the administrative remedy open to him. It is only when administrative remedies have been denied or are exhausted that the courts are available. Also, the courts are even then available only for limited purposes. The courts have no power to classify registrants— that is solely for the agencies created by or under the authority of the Congress. But classification by such agencies must, under the powers given them by Congress, be honestly made, and a classification made in the teeth of all of the substantial evidence before such agency is not honest but arbitrary. Courts can prevent arbitrary action of such agencies from being effective. But a registrant cannot come to a court for such relief until he has exhausted all available and sufficient administrative remedies for such arbitrary action. Appellant has not availed himself of such corrective administrative relief. He has no standing in a court to complain and the court cannot examine the arbitrariness of his classification by the local board

Appellant claims he was denied his right of appeal by the local board. There is no evidence to support that contention. He did not even try to appeal. He testifies that he consulted the secretary and two members of the board as to what he could do and was told there was nothing they could do further. Appellant was a highly educated man. The original questionnaire filled out by him carried the information of a right of appeal from classification. He received the notice card for his original classification. This was an official form (Form 57). This form prominently stated: "Note: Appeal from a classification by a

Local Board or Board of Appeal must be made within five days from the date of this notice at the office of the Local Board." The Conscientious Objector form of questionnaire filled out by appellant contained (under "Instructions"): "The procedure for appeal from a decision of the Local Board on a claim for ·conscientious objection is provided for in the Selective Service Regulations." It is idle to think that appellant did not know he had a right of appeal. He never sought an appeal. The board did nothing to prevent such an appeal.

Our conclusion is that the motion for directed verdict was properly denied.

**(3) Comment of the Court upon Evidence.**

■ The situation giving rise to this contention is as follows:

"Q. Now, you had received your questionnaire all right through the mail, hadn't you? A. My original questionnaire, yes, sir.

"Q. You received that card that you hold in your hand, marked 'Defendant's Exhibit B'? A. Yes, sir.

"Q. Didn't you? A. Yes, sir.

"Q. You got that through the mail, too, didn't you? A. Yes, sir.

"Q. You got your order for induction through the mail? A. Yes, sir.

"Q. You got everything through the mail, you say, that they "said they", sent you, except your second classification card?

"Mr. Covington: Now, wait just a minute. There is absolutely no evidence in the record that they mailed any second classification card. On the contrary, the undisputed evidence which they have offered here shows there was no card mailed, because their own record here shows the only card of classification mailed was on December 30, 1941, and no other, and this question here is asked, assuming a matter that is not in evidence, and which is not true from their own records and, therefore, it is asked for a prejudicial purpose. We ask now that the jury be discharged and a

mistrial declared, for the reason that this prejudicial question has been asked.

"The Court: The objection is overruled.

"Mr. Covington: Now then, we object and ask now that the question be stricken from the record.

"The Court: That request is denied. Read the question. (Question read).

"Mr. Covington: The second classification card.

"The Court: He can answer that question, 'Yes' or 'No'. It does not imply—

"Mr. Covington: (Interrupting) It is something not in evidence.

"The Court: It does not even imply, gentlemen, that he got the second classification card.

"Mr. Covington: I take exception to the remarks of the Court and ask now that the jury be discharged on account of the remarks of the Court as prejudicial to the jury.

"The Court: Certainly the jury will not misunderstand me.

"Mr. Covington: The Court is commenting on the evidence and we take an exception to that.

"The Court: It is not intended as a comment and in order to clarify the record, let it be understood that the question is stricken. Now, reframe the question so there will be no dispute about what it means."

We think this bare statement of the evidence reveals the unsoundness of this contention.

**(4) Improper Argument by Counsel for the Government.**

■ Several statements in the closing arguments of counsel for the Government are attacked as improper and prejudicial. We have examined each of these statements as well as the entire closing argument. That there is no error in any of them is clear except as to one statement. That statement occurred near the opening of the closing argument. It is quoted in the footnote.[2] This statement might or might not

2 "I wish to say too at the outset that I agree most wholeheartedly with these gentlemen who have all spoken to you with reference to those very precious liberties which are guaranteed to all American citizens in the Bill of Rights which we got from the Common Law of England and which has been put into our Constitution, the rights of freedom of speech, freedom of the press, the right to free assembly and petition, and the right to freedom of religion. But I want to remind these gentlemen who talked to you so loudly about these rights, that those rights were won for you and me by patriotic Americans who took guns and stood upon the blazing line of battle to defend those rights and to give their lives, if necessary, that their descend· ants, you and I, might enjoy the bless-

be error and prejudicial error. This depends largely on whether it was in proper answer to or justified by something in the preceding argument for appellant. Expressly, counsel had in mind something said in the preceding argument for appellant, which he was endeavoring to meet. Unfortunately, the argument of counsel for appellant is entirely omitted. In this situation, we cannot presume error or prejudice and must determine this issue against appellant. Chicago & N. W. R. Co. v. Kelly, 8 Cir., 74 F.2d 31, 37; Murphy v. United States, 8 Cir., 39 F.2d 412, 414; Hoffman v. United States, 8 Cir., 20 F.2d 328; Metropolitan Life Ins. Co. v. Banion, 10 Cir., 106 F.2d 561, 568, certiorari dismissed 309 U.S. 691, 60 S.Ct. 468, 84 L.Ed. 1033.

(5) Erroneous Charge and Denial of Requests to Charge.

Appellant contends for two errors in the charge as given and for four claimed refusals to charge as requested.

■ One of the two objections to the charge is stated to be that the court "should not have read from Selective Service Regulations pertaining to 1-A-O classification and refused to read from the Act and Regulations with respect to classification claimed by appellant." In the early part of the charge and before adverting to the fact issue before the jury, the Court expressed the belief that the jury would better understand the fact issue before it if he gave them a brief outline of the law as a background, and particularly so because this law was not well known. To do this, the Court read brief extracts from the Act and from the Regulations. One of these extracts was the third sentence of section 5(g) of the Act, 50 U.S.C.A.Appendix § 305(g), bearing upon the right of appeal of a conscientious objector claiming exemption from *combat* service. The essence of the objection was thus expressed: "You read so far as conscientious objector went with respect to non-combatant service, the Government might from 1-AO get him into non-combatant service, and did not finish the balance of it, as I understood it, and I listened carefully. That issue is there because of the original questionnaire. We view that issue is in there because the original questionnaire shows objection to combatant and non-combatant service." It would seem that counsel had misapprehended what the Court had stated. However, the contention seems to be that, if the Court mentioned one sort of service (combat or non-combat), he should have covered the other since appellant was objecting to both. This was not important on the fact issue before the jury, which was mailing or not mailing the notice of reclassification. When the Court later came to charging as to the rights of appellant, he clearly stated his right to an appeal from the reclassification and that failure to mail notice of such reclassification would be a denial of such right to appeal with the result of acquittal. There is no substance in this contention.

■ The second objection to the charge as given is stated thus: "The trial court improperly summed up the evidence to the prejudice of appellant by narrating the important facts established by Government witnesses and wholly failing to sum up the unfavorable evidence of the Government and the evidence in behalf of appellant particularly with reference to the main issue of whether or not the second card was actually mailed; and assumed a hypothetical fact which was not established by the evidence, to-wit, that the card could have been lost in the mails; the entire charge being in the nature of an argument in behalf of the Government."

The nearest reference, in the charge, to the evidence is: "You may have observed

ings of liberty. Those rights about which they prated so loudly to you today were not won for us, we do not enjoy them today, gentlemen of the jury, by reason of the efforts of conscientious objectors. We enjoy those rights—

"Mr. Covington: (Interrupting) We take exception.

"Mr. Phelps: (Continuing)—by the sacrifice—

"Mr. Covington: Just a moment, we object to that statement that those rights were not made by efforts of conscientious objectors because it is obviously prejudicial.

"Mr. Phelps: I think it is historically true.

"Mr. Covington: An inflammatory statement entirely out of the record and which is contrary to the very Act itself and made for the purpose of prejudicing the jury against this defendant, and for that reason it is grounds for mistrial.

"The Court: Overruled.

"Mr. Covington: And we ask now that counsel be instructed to withdraw those remarks and the jury instructed not to consider them.

"The Court: Request denied.

"Mr. Covington: Exception."

and will no doubt call to mind the evidence on this particular question, and it is for you to remember the evidence. I shall not comment upon the evidence in any manner intended to indicate what you should do with that evidence, but keep in mind the question, 'Was the notice of reclassification mailed?' The defendant says it was not, and bases that statement, as I recall, largely upon the fact that he says he did not receive it. Other testimony offered by the Government was to the effect that it was mailed, and that in addition, a verbal notice of reclassification was given. Obviously, it is possible for both witnesses to be telling the truth about it, because obviously it is possible that it was mailed but not received. It is for you to determine that question; the importance of it, I expect, is obvious."

Obviously, there is no error in this.

▆ Of the four denied requests to charge, one is refusal to charge that the closing argument by the Assistant United States Attorney is not entitled "to any additional weight or respect by reason of fact that argument was made by government official." This request was denied because "it has already been covered in the charge." It is not correct that this particular matter was covered in the charge,[3] however, the statement in the footnote sufficiently informed the jury that they were sole judges of the facts and evidence and should not be influenced by any action or expressions by the Court or by counsel in performing that duty. Had there been no such statement by the Court, it would not have been error to refuse this request.

▆ The second refusal of a request is stated as being: "if they believed or had reasonable doubt that Draft Board led appellant to believe he was properly classified and had no grounds of appeal and appellant relied upon such representations prior to receiving notice of delinquency that they should acquit appellant." There is no basis for this contention. There is no evidence upon which to predicate it. No question as to right of appeal was ever raised by appellant with anyone. This matter of appeal appears in this controversy for the first time in the evidence of appellant in his defense. There is every indication that it is purely an afterthought.

▆ The third and fourth refusals of requests have to do with a request (in substance) as follows: "if they found or had reasonable doubt that Draft Board acted arbitrarily and capriciously and failed to consider written proof submitted by appellant as to conscientious objection to combatant and noncombatant service then jury should acquit appellant."; and one (in substance) as follows: "as to whether the Board failed to consider evidence as to appellant's occupation as ordained minister."

Each of these requests was properly refused for the same reason. That reason is that the merits of the action of the Local Board are not open for judicial inquiry or control where a registrant has not, as here,

---

[3] At the beginning of the charge, the Court stated:

"Gentlemen, most of you, I expect all of you, understand without my saying to you what I am going to say, but it does not hurt to repeat it, as to the province of the Court and the jury and counsel in the case. Attorneys in this case have presented the evidence fully for your consideration. It is the duty of the Court to give you the law of the case, and it is your duty to receive that as the law of the case. If the Court should be in error as to the law that is given to you, then there are proper courts to correct that, so it is necessary and imperative that you receive the law of the case as I give it to you.

"You at the same time are the sole judges of the facts in the case. That is your prerogative. Where there is a dispute as to what the true facts are, you determine that dispute. You resolve the dispute and determine what the facts are. Therein lies your especial duty, and in the dis-

charge of that duty, it is neither my intention nor my desire to influence you one particle. If I should say anything that might have a tendency to influence you, as to the determination of the facts, you are not only at liberty to disregard that, but you should disregard it, because it is not intended in that manner. I do not desire to encroach upon your prerogative in any sense at all. So much for that.

"I may say, in passing, however, that in the heat of a trial, gentlemen, as you have observed, counsel will make statements across the counsel table that possibly are inadvertent and spontaneous, and you will not be concerned by the statements of counsel. I may add properly that the Court is not entirely immune from those natural tendencies, and may say something that is not intended to be said, and the same thing applies to any statement or ruling of the Court. It is not evidence in the case and will not be received by you in your deliberations of the facts of the case."

exhausted his remedy of appeal to the Appeal Board.

### (6) Excessive Sentence.

This contention is that the Court "grossly abused his discretion in imposing sentence * * * to serve four years imprisonment in the penitentiary." This is claimed to be a "cruel and unusual punishment" within the meaning of the Eighth Amendment to the Constitution. This claim is not leveled at the validity of the Act (section 11) setting out the maximum penalty for violation of the Act. It has to do with the action of this Court in assessing this penalty—being within the above statutory limits. In short, the contention is purely one of excessive sentence. Such a contention is not cognizable by this Court. Holmes v. United States, 8 Cir., 115 F.2d 528, 529; Cochran v. United States, 8 Cir., 41 F.2d 193, 207; Gurera v. United States, 8 Cir., 40 F.2d 338, 340, 341.

### Conclusion.

The judgment of conviction must be, and is, affirmed.