**LIPSCOMB v. UNITED STATES.**

No. 14873.

United States Court of Appeals,
Eighth Circuit.

Feb. 3, 1954.

Rehearing Denied March 15, 1954.

832

Robert Edward Lipscomb on brief, pro se.

Harry Richards, U. S. Atty., and William J. Costello, Asst. U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before GARDNER, Chief Judge, and STONE and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from an order denying appellant's motion to vacate and set aside a judgment and sentence entered against him April 6, 1951. Section 2255, Title 28, U.S.C. We shall refer to appellant as defendant.

Defendant pleaded guilty to an information containing five counts filed by the United States Attorney for the Eastern District of Missouri, charging him in four counts with the unlawful passing and uttering of forged twenty dollar Federal Reserve notes with intent to defraud various persons at various times, and charging him in one count with the unlawful possession of seventeen of the counterfeit twenty dollar bills. On his plea of guilty to each count of the information on April 6, 1951, he was sentenced to five years imprisonment upon each count, the sentences to run consecutively. The sufficiency of the information is not here in question and need not be further set forth.

On June 16, 1952, defendant filed a motion to vacate the judgment of conviction and sentence of April 6, 1951, in which he alleged he had been of unsound mind because of an active drug addiction and that he was mentally incompetent to waive counsel and enter a plea of guilty. Hearing was had on this motion December 5, 1952, at which time defendant appeared personally and by counsel.

As a witness in his own behalf he testified that shortly before his arrest on March 29, 1951, he came to St. Louis and made a narcotic "connection" and secured narcotics which he administered to himself to such an extent that he suffered aggravated tortures in connection with his overindulgence in these narcotics; that he was a narcotic addict, and smuggled into jail some eighteen capsules of heroin which he secretly administered to himself until April 3, 1951 when his supply became exhausted; that thereafter he was unable to secure further narcotics and suffered from "withdrawal pains"; that he was unable to secure medical attention and as a result was physically ill and mentally irresponsible; that he had but vague recollec-

tion of what occurred at the time of his arraignment, but did remember the courtroom, the judge, the court reporter, and the government attorney handling the government's case. He testified further with reference to his physical condition and suffering during the time between his arrest and the time of his arraignment, the effect of which was that he was mentally irresponsible during the entire period covered by his testimony because of the fact that he was a narcotic addict and because of the effect of the narcotics administered to himself shortly before his arrest. There was no other testimony introduced by defendant but there was introduced by stipulation records of the treatment of defendant while he was confined in jail on a previous occasion, showing the conclusions of five physicians who examined him, and that it was the opinion of these five physicians who examined him, who purported to draw their conclusions from such examination, that he was well oriented but was a malingerer.

The government introduced in evidence the record of the proceedings had in court in connection with the filing of the information against him and his arraignment thereon and also the record relative to his sentence. This record shows that he was advised by the court of his right to the assistance of counsel. He was interrogated with reference to his desires in this matter on three different occasions and fully advised as to his rights in this regard, but each time he said that he did not desire such assistance but would represent himself. With reference to defendant's physical condition and apparent mentality during the time he was under arrest and imprisoned immediately prior to his arraignment, the government produced the patrolman making the arrest, a representative of the Federal Bureau of Investigation, the warden of the city jail, a patrolman of the narcotics squad of St. Louis, and a deputy United States Marshal, all of whom had been in contact with defendant, and some of whom had interrogated him for a considerable period of time and had occasion not only to converse with him but to observe his conduct. All of these witnesses testified to his mental alertness, the warden of the city jail particularly, and testified that there was no evidence of physical suffering on behalf of the defendant while he was confined in jail subsequent to his arrest. In addition to these witnesses the government introduced testimony of two psychiatrists who had examined defendant shortly following his sentence. Both of these doctors diagnosed the defendant as a paranoid psychopath which in the defendant's case they said is nothing but a suspicious liar who blames society for any unfortunate situation in which he finds himself; that such a person never profits from his experience; that defendant impressed them as clever, intelligent, shrewd, courteous, cooperative and aggressive and as a person with a past history of malingering; that the mental faculties and intellectual functions of a person who is under the influence of narcotics or who is suffering from their withdrawal symptoms ordinarily will not be impaired and that these things have no bearing on his mental competency; that if a person is suffering from pain so severe as to cause him to be irrational, it would be immediately obvious to everyone who observed him; that their study of the histories and examinations of the defendant made at Leavenworth caused them to conclude that the defendant was in such possession of his mental faculties as to enable him rightly to comprehend his condition with reference to any proceedings against him on April 17, 1951, and it would be their opinion therefore that it would be highly improbable that he was in such an unsound mental state on April 6, 1951, that he could not comprehend his condition with reference to the proceedings pending against him at that time; that it would be highly improbable that he could have been in such a state of mental incompetence on April 6, 1951, so as not to comprehend his

condition at that time and then to have recovered to such a great degree by April 17, 1951; that from their examination of the histories and medical reports, especially as to the defendant's confinement in Detroit, Michigan, in December of 1950, that he was malingering, and in the light of his condition on April 17, 1951, they concluded that he was competent and sane on April 6, 1951. There was also offered in evidence defendant's letter stating that he was guilty of the charges enumerated in the information and wanted to plead guilty, a statement signed by defendant admitting the possession and passing of the various counterfeit bills set out in the information and a statement signed by defendant admitting violations of the Mann Act, 18 U.S.C. §§ 2421–2423, the Dyer Act, 18 U.S.C. §§ 10, 2311–2313, and the National Stolen Property Act, 18 U.S.C. §§ 2311, 2314, 2315.

The court found the issues in favor of the government and specifically found that at the time of the commission of the offense, at the time of the defendant's arrest, at the time of his incarceration in the St. Louis City Jail, at the time of defendant's arraignment and sentence, and at the time of the hearing on defendant's motion to vacate, the defendant was at all such times of sound mind and in such control of all his mental faculties as to enable him to rightly comprehend his condition with reference to the proceedings against him. The court further found that at all the said times mentioned the defendant was not under the influence of narcotics nor was he suffering from pains caused by withdrawal from narcotics which were so severe as to prevent him from rightly comprehending his condition with reference to the proceedings pending against him, and the court further found that the defendant had voluntarily waived his right to counsel and indictment and had voluntarily entered a plea of guilty to all counts of the information. Based upon these findings the court denied defendant's motion.

On this appeal defendant calls attention to various decisions of the Supreme Court with reference to the right of a defendant in a criminal proceeding to the assistance of counsel as provided by the Sixth Amendment to the Constitution. It is, however, the contention of the government that while he was entitled to the assistance of counsel at all stages of the proceedings against him, he was offered such assistance and that he intelligently declined and voluntarily undertook to represent himself. It must be conceded that an accused may waive his constitutional right to the assistance of counsel in his defense and the question before the trial court was whether he had intelligently done so. Martin v. United States, 4 Cir., 168 F.2d 1003; Powell v. United States, 5 Cir., 174 F.2d 470. The record of the proceedings had at the time of his arraigment was offered in evidence and affirmatively showed that his constitutional right in this regard was scrupulously guarded by the trial court. This record must be accepted as presumptively accurate and truthful. Carroll v. United States, 6 Cir., 174 F. 2d 412. His plea of guilty to all the counts of the information was an admission of his guilt, a waiver of all nonjurisdictional defects and defenses and an admission of all the facts averred in the information. Hood v. United States, 8 Cir., 152 F.2d 431.

The only evidence introduced on defendant's motion to vacate the judgment and sentence which tended to sustain his claim that he was mentally incapable of waiving his constitutional right to the assistance of counsel was his own testimony. This the court was not bound to believe as it was in conflict with the testimony of all the other witnesses including that of seven expert physicians. The court, as has been observed, found that at the time of the proceedings leading up to his arraignment and sentence he was mentally competent and the court also found that he had intelligently waived his right to the assistance of counsel. The findings of

the court are presumptively correct and will not be set aside unless clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C. The evidence here, we think, sustains the court's findings by an overwhelming preponderance. The order appealed from is therefore affirmed.