Robert Edward **LIPSCOMB**, Appellant,

v.

**UNITED STATES of America,** Appellee.

No. 16265.

United States Court of Appeals Eighth Circuit.

Jan. 27, 1960.

**861**

Before GARDNER, WOODROUGH and VOGEL, Circuit Judges.

GARDNER, Circuit Judge.

Defendant (appellant) brought this proceeding by petition for a writ in the nature of a Writ of Error Coram Nobis, seeking to have some of the consecutive sentences imposed upon him made to run concurrently. Defendant was charged in an Information of five counts with violation of Section 472, Title 18 United States Code. Counts One, Two, Three, and Four each charged him with the unlawful passing and uttering of forged twenty dollar Federal Reserve notes with intent to defraud various persons at various times, and in Count Five with the possession of seventeen of the counterfeit twenty dollar bills.

On arraignment he was without counsel, whereupon he was advised of his right to have counsel appointed for him by the court, but he declined the offer to appoint counsel and intelligently entered a plea of guilty to each of the counts of the Information. Lipscomb v. United States, 8 Cir., 209 F.2d 831. Following the plea of guilty and before pronouncement of sentence the following proceeding was had:

"Mr. Costello (United States Attorney): This defendant has been operating rather extensively during most of his life in breaking the law. He has used various aliases, including Benny Johnson, Benny Robbins, Eli Deponto, Ely Panto, Amon Rasig, and certain other names.

"On March 22nd and 24th, 1951, the F. B. I. Office in Mobile, Alabama, advised that this defendant here, Robert Edward Lipscomb, at that time, using the name of Benny Johnson, represented himself to be a purchasing agent for the Cadillac Sales Company, Cleveland, Ohio, and through this representation purchased from Col. George E. Holcomb at the Maxwell Air Force Base in Alabama, two Buicks; one was a 1946 Buick, four-door sedan, and the other was a 1950 Buick, two-tone

Henry D. Espy, St. Louis, Mo., for appellant.

Noel L. Robyn, Asst. U. S. Atty., St. Louis, Mo., for appellee.

blue. Lipscomb at that time gave the colonel there two falsely certified checks in the total amount of $3,800.00. He had his own certifier, that he had put a rubber stamp on there, so they appeared to be certified.

"It was then discovered by teletype from the Cleveland F. B. I. Office that the defendant here had purchased another Buick, a 1947 black Buick convertible, by another false check, fraudulent check in the amount of $1,295.00, from one Amon Rasig, Cleveland, Ohio.

"He was arrested when the detectives of the City of St. Louis were looking out for stolen cars here and were looking at cars parked in the vicinity of the Calumet Hotel, and they found this Buick that the defendant had gotten fraudulently from this Amon Rasig in front of the Calumet Hotel. They had the license number and they found a car there, and then went into the hotel and found this defendant, on March 29th of 1951.

"At the time they arrested him, he first told them that his name was Amon Rasig, the man he had gotten the car fraudulently from. They asked him if he had any criminal record and he said he had been sentenced at Jackson State Penitentiary at Jackson, Michigan, on a fifteen-year sentence for robbery in 1940, and had been released on parole January 30, 1950. When they arrested him, they, of course, searched him and found he had $127.01 in legal currency of the United States, and he had four bogus $20.00 bills that I shall describe in more detail a little later. He was then placed under arrest and taken to the Police Station and executed a signed statement for agents of the F. B. I. and police officers and secret service.

"He said that on January of 1951, he met up with a girl named Della Tony, who lived on Monroe Street in Detroit, Michigan, and he took her around in his various travels in the automobile that he said he purchased with good money. He took her to Buffalo, New York, where they stayed at the Virginia Hotel and the Little Harlem Hotel. He admitted in his signed statement that while in Buffalo, he had a number of Ford Motor sales and service company checks printed up. These checks bore the address of 2171 Bail Avenue, Buffalo, New York, and were drawn on an account which he opened at the Buffalo Industrial Bank there. These checks, of course, were no good. He used the name of Benny Johnson in the use of these bad checks.

"He said that his friend, a friend of his named Simms, and this Della, got picked up by the police there and he then bought this '49 Buick in Buffalo, New York, this black convertible from Freddy Midrich for $1,750.00. He said he gave him a good check for about $50.00 of this account he opened up there; however, the rest of the money of the $1,750.00 was covered by a bad check drawn on this bank. Immediately he left Buffalo, New York, he said, and then went to Columbus, Ohio, where he met another woman, Julia Owen, in a bar, and she lived with him for several days in his travels that were throughout that state and other states.

"His signed statement further went on to say that he had read about these two Buicks I mentioned he bought from the colonel at the Maxwell Air Force Base just outside Montgomery, Alabama, and that he represented himself as this Cadillac agent representative and made various negotiations with this colonel and finally bought it for $2,800.00—this one for $2,800.00 and the other one for $1,000.00, which this bad check which I described as having this false certification on it.

"He then drove the 1950 Buick to St. Louis and hired another friend

of his, John Frank, to follow him in the other Buick, and lived here for a while and then went back to Cleveland where he bought another 1947 Buick from this Amon Rasig, which I mentioned, giving him a bad check for that. This is the car he subsequently drove to St. Louis, and is the cause of his being arrested here.

"He admitted in his signed statement also that at the time he was arrested by the St. Louis police he had on his person four counterfeit $20.00 notes, and he said that also in the car he was using at that time, this '47 Buick, there were thirteen more counterfeit $20.00 notes, which were concealed under the front seat.

"He said that he first heard about counterfeit money in Cleveland, Ohio, about February 26th of this year, when a fellow named McGrill there showed him a counterfeit $20.-00 bill. He said he had a connection to buy counterfeits. After various negotiations they went to the Ebony Club in Cleveland and he was able to get $1,000.00 in these counterfeit $20.00 notes and he paid this man $300 in good money for these counterfeits.

"He admitted that he went to Toledo and passed two counterfeits there, and went to Chicago and was there for about two days and in going there he passed through Detroit and passed about four counterfeits in Detroit. In Chicago he passed about 17 counterfeit notes and then came to St. Louis, where he passed about eight of these counterfeit $20.-00 notes before he was arrested by the police. * * * He is a Detroit, Michigan parole violator, and the Detroit Police Department Check Squad informed the F. B. I. here that he had been placed on a four-year parole on January 31, 1950, and was presently, of course, a parole violator. The Detroit Police further stated that while he was confined in the Wayne County Jail there he was

able to escape and he was still, of course, looked for as a result of this escape, and a retainer has since been filed against him. In Buffalo, New York, the Assistant United States Attorney there informs me that a complaint has been filed against him for violation of the white slave traffic act. It was filed on March 6th of this year before the commissioner, the United States Commissioner there.

"The Mobile, Alabama, office advises that the United States Attorney at Montgomery has forwarded the necessary papers to have the defendant removed to Montgomery to stand trial for violations of Section 13 of Title 18, down there at Montgomery on these bad checks, and that, of course, there is a retainer here for the defendant. Buffalo, New York, advises that the Assistant United States Attorney prefers that the subject Lipscomb be prosecuted here on the charges I am indicating from Mobile and on the counterfeit charges here in St. Louis, and he said that he would prefer that the court sentence him, keeping in mind these charges in his jurisdiction and then he would possibly dismiss his complaints there.

"The Court: Do you have anything to say before the court passes sentence?

"The Defendant: Just a little bit, your Honor. I realize that I have done wrong and I am in this up to my ears. The only thing that I can say is that you temper justice with mercy, and also if there is anything you can do to help me, because I am addicted to narcotics. * * *

"The Court: * * * I do want the record to show, however, that in passing sentence in this case that I am taking into consideration the fact—I don't know what these various courts will do—but I think that you probably should advise them, Mr. Costello, that I am taking into consideration the fact that he es-

caped from the custody of the Detroit police in 1951, where he had been arrested on a bogus check charge, fugitive from justice there, that he is wanted in Cleveland on bogus check cases as well as the purchasing, which involves probably the purchase of this Buick automobile, that he is wanted in Mobile—in Rochester, New York, on a bogus check charge, and on a Federal White Slave Act case, and he is wanted in the Middle District of Alabama on check cases.

"On your plea of guilty to the information in this case, it is the judgment of the court that you be committed to the custody of the Attorney General for a period of five years on Count 1, to be served in an institution designated by the Attorney General. The same sentence on Counts 2, 3, 4 and 5; sentence on Counts 2, 3, 4 and 5 to run consecutively with one another and Count 1, a total of twenty-five years.

"You can stand aside."

No appeal was taken from the judgment of the court entered April 6, 1951, nor was any motion for new trial interposed, but more than a year later defendant made a motion to vacate the judgment on the ground that he was of unsound mind and hence mentally incompetent to waive counsel and enter a plea of guilty. He was granted a hearing on this motion by the trial court and appeared personally and by counsel and testified in his own behalf. On the evidence produced the trial court specifically found the issues in favor of the Government and entered its order denying defendant's motion. From this order defendant appealed and we affirmed. Lipscomb v. United States, supra. We considered four separate motions filed by him, collaterally attacking the judgment. In one motion he asked leave to withdraw his plea of guilty. This motion was denied by the trial court and he thereupon filed motion to reconsider, which was also denied, and on appeal was affirmed. Another appeal consolidated with the one just mentioned challenged the order of the trial court in denying his motions to discharge him on the ground that the judgment did not pronounce effective consecutive terms, or in the alternative to vacate judgment and sentence, and the last motion was to correct the judgment on the ground that there is no prima facie law authorizing consecutive sentences. Lipscomb v. United States, 8 Cir., 226 F.2d 812. In the meantime he had brought many proceedings in the trial court seeking relief, all of which were denied, as noted in our decision.

In seeking reversal defendant contends in substance that: (1) the motion in the nature of a Writ of Error Coram Nobis filed by defendant in the United States District Court was the proper remedy to attack the judgment and sentence of defendant; (2) the court erred in overruling the defendant's motion to vacate the judgment and sentence, or that portion thereof sentencing him for crimes he was alleged to have committed in other jurisdictions; and (3) the court erred in overruling defendant's motion to vacate said sentence for the reason that Section 472 of Title 18 United States Code, did not authorize the imposition of separate consecutive terms under Counts One and Two, where, in a single bet in a dice game, more than one person received a counterfeit bill at the same place and time on March 27, 1951, and the court erred in overruling defendant's motion to vacate said sentence for the reason that Section 472 of Title 18 United States Code, did not authorize the imposition of separate consecutive terms of imprisonment under Counts Three and Four where, in a single bet in a dice game, more than one person received a counterfeit bill at the same place and time on March 28, 1951.

■ As has been observed, there was no appeal from the judgment imposing a five year sentence on defendant on each count of the Information. Under the law, the court might have sentenced defendant to fifteen years on each count of the Information. As the court imposed sentences authorized by statute,

the reasonableness of the sentences is not a matter which we may review. Affronti v. United States, 8 Cir., 145 F.2d 3; Egan v. United States, 8 Cir., 268 F.2d 820; Jacobsen v. United States, 8 Cir., 260 F.2d 122; Holmes v. United States, 8 Cir., 115 F.2d 528; Johnson v. United States, 8 Cir., 126 F.2d 242; Holmes v. United States, 8 Cir., 134 F.2d 125. As said by us in Affronti v. United States, supra:

"The court imposed a sentence authorized by statute. This Court cannot concern itself with the question of the reasonableness of the sentence. 'Where a District Court imposes a sentence authorized by a statute of the United States, it commits no error of law.' Holmes v. United States, 8 Cir., 115 F.2d 528, 529; Johnson v. United States, 8 Cir., 126 F.2d 242, 251; Holmes v. United States, 8 Cir., 134 F.2d 125, 135." [145 F.2d 10.]

Not only did defendant fail to move for a new trial or to appeal from the judgment imposing sentences, but he entered upon the service of the sentences imposed. This being true, and the sentences not being illegal, this Court cannot now change the sentences. In Egan v. United States, supra, we said, inter alia:

"While a court may correct an illegal sentence at any time (Rule 35 of the Rules of Criminal Procedure, 18 U.S.C.A.), the beginning of the service of the sentence in a criminal case ends the power of the court to change it. Ex parte Lange, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872; United States v. Murray, 275 U.S. 347, 358, 48 S.Ct. 146, 72 L.Ed. 309. See and compare, Phillips v. United States, 8 Cir., 212 F.2d 327, 335, and Affronti v. United States, 350 U.S. 79, 83, 76 S.Ct. 171, 100 L.Ed. 62." [268 F.2d 823.]

It has been judicially determined that he pleaded guilty intelligently to each of the counts of the Information. Having done so, his plea of guilty to all the counts of the Information was an admission of his guilt, a waiver of all non-jurisdictional defects and defenses and an admission of all the facts averred in the Information. Lipscomb v. United States, 8 Cir., 209 F.2d 831; Hood v. United States, 8 Cir., 152 F.2d 431.

It is well established that Writ of Error Coram Nobis, or other collateral attacks on the judgment, will not lie where there is another adequate remedy, as by motion for new trial or appeal. Taylor v. United States, 8 Cir., 229 F.2d 826; Shobe v. United States, 8 Cir., 220 F.2d 928; Burns v. United States, 8 Cir., 229 F.2d 87; Kaplan v. United States, 8 Cir., 234 F.2d 345; Hickman v. United States, 8 Cir., 246 F.2d 178; 24 C.J.S. Criminal Law § 1606 B(3), page 147. The rule is succinctly stated in 24 C.J.S., supra, as follows:

"The writ of error coram nobis will not lie where there is another adequate remedy, as by motion for new trial or in arrest of judgment, appeal, or motion to recall the remittitur."

It cannot serve the purpose of an appeal and, conversely, where the question sought to be litigated could be raised on appeal, the writ will not lie. Its function, primarily at least, is for the correction of an error of fact not apparent on the record and which, if known to the court, would have prevented the entry of judgment. Taylor v. United States, supra; Burns v. United States, supra. Manifestly, the questions sought to be raised in this proceeding could have been raised on an appeal from the judgment and hence the Writ of Error Coram Nobis cannot be maintained.

Assuming, however, that the trial court and this Court might properly consider defendant's contention that the sentences should be modified or set aside because the court at the time of sentence took into consideration the criminal record of the defendant, we think the action of the court in this regard was without error. Rule 32(c), Federal Rules of Criminal Procedure, Title 18 United States Code, provides in part:

"(1) The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence * * *

"(2) The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence * * * and such other information as may be required by the Court."

Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337; Young v. United States, 8 Cir., 259 F.2d 641; Friedman v. United States, 8 Cir., 200 F.2d 690; Stobble v. United States, 7 Cir., 91 F.2d 69. Quite a full report was made to the court with reference to the defendant's criminal career and it is worthy of note that it is admitted that the report as given was correct and hence the court was not misled nor was any advantage taken of the defendant in this regard. He was present and heard the entire report and made no protest or denial of any part of it and counsel, with commendable frankness, admits, both before the trial court and before this Court, that there were no misstatements in this report. Thus, before the trial court he said, inter alia:

"Now, we are not claiming that there was any false statements or anything of that in this case."

■ Manifestly, it was proper for the court to consider this appalling criminal record of the defendant in determining the sentences to be imposed upon him. The fact that the court requested the United States Attorney to advise the various courts that it was taking into consideration the criminal record of the defendant, was in the nature of a favor done the defendant and a courtesy due the courts where the criminal proceedings were pending, and the court specifically stated that it did not know what, if any, attention the courts would pay to its action in the instant case.

Great reliance is placed by counsel for defendant on Smith v. United States, 5 Cir., 223 F.2d 750; Keenan v. Burke, 342 U.S. 881, 72 S.Ct. 162, 96 L.Ed. 661; and Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690. As pointed out by us in Young v. United States, supra, the cases are readily distinguishable in their facts from the case at bar. In each of the cited cases there was misinformation given to the court. The case of Young v. United States, supra, is quite similar in its facts to the case at bar. In that case it was contended that the court improperly took into consideration other criminal offenses to which defendants had expressed their intention to plead guilty. Answering this contention of appellants, we said, inter alia:

"Only one of the additional contentions will therefore be touched upon. This is their assertion that the court improperly took into account the charges pending against them in other jurisdictions, in the length of the sentences which it imposed.

"They rely upon Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690, where a sentence was held to be invalid, because the trial court, in the length of the sentence which it imposed upon the prisoner, had acted 'on the basis of assumptions concerning his criminal record which were materially untrue,' and which, in view of the prisoner's lack of representation by counsel, had caused 'the careless or designed pronouncement of sentence' to rest on 'a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide', as to make the sentencing proceedings lacking in due process. 334 U.S. at page 741, 68 S. Ct. at page 1255. See also Keenan v. Burke, 342 U.S. 881, 72 S.Ct. 162, 96 L.Ed. 661; Smith v. United States, 5 Cir., 223 F.2d 750, 754.

"But the sentencing proceedings here in no way fall within the in-

justice underlying or the condemnation made in the cases cited. Appellants, as has been pointed out, and as the trial court found, had the effective representation of able counsel, of their own choosing, in the sentencing proceedings on all three of the cases involved. No false statements are shown to have been made to the court as to appellants' criminal activities or previous records. Nor was there any improper element of consideration involved in the court's sentencing statement, of which appellants complain: 'I am convinced that you are confirmed criminals and that this Court must impose substantial periods of confinement. * * * I am not going to sentence you for the things that you did outside of this jurisdiction, of course. There are many other charges pending against you but naturally I am going to take that and must take that into consideration in determining whether or not leniency should be exercised in imposing sentences in these cases.'

"It will be recalled, as previously noted, that as to these various other charges appellants had expressed the desire to get them all transferred under Rule 20, and the intention to plead guilty to them, in order to 'have the whole thing over with'. Thus, the court's sentence, in taking into consideration appellants' various other offenses, was not, as in the Townsend case, supra, being rested upon 'a foundation * * * materially false'." [259 F.2d 645.]

We think the record shows that the court properly considered the truthful report with reference to defendant's criminal record and defendant was sentenced, not for offenses committed outside the jurisdiction of the court, but for the five offenses to which he had pleaded guilty.

His plea of guilty was a plea of guilty as charged. He was charged with five separate offenses. His plea admits all averments of fact, waives all defenses and cures all non-jurisdictional defects. Certainly the trial court, in the circumstances disclosed by this record, was bound to assume that each count stated a separate offense, and after judgment and sentence on plea of guilty the matter is concluded and no proof should be received assailing the judgment collaterally.

Defendant has been very ably represented in this proceeding by court appointed counsel and we have given careful consideration to all contentions urged, but conclude on the whole record that the judgment appealed from must be affirmed. As said by us in Lipscomb v. United States, 8 Cir., 226 F.2d 812, 817:

"Public policy requires that there should be an end of litigation and litigants are entitled to protection from harassment by attempts to relitigate questions already finally determined."

Affirmed.